KYRA A. KAZANTZIS (STATE BAR NO. 154612)
kyrak@lawfoundation.org
ANNETTE D. KIRKHAM (STATE BAR NO. 217958)
annettek@lawfoundation.org
MELISSA A. MORRIS (STATE BAR NO. 233393)
melissam@lawfoundation.org
JUDY WONG (STATE BAR NO. 299990)
judy.wong@lawfoundation.org
THOMAS P. ZITO (STATE BAR NO. 304629)
tom.zito@lawfoundation.org
LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT
152 North Third Street, 3rd Floor
San Jose, CA 95112
Telephone: (408) 280-2411
Facsimile: (408) 293-0106

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| JOHN FUNG, and LYNETTE MASON<br><br>          Plaintiffs,<br><br>     v.<br><br>PATRICE JOHNSON RAY a/k/a PATRICE JOHNSON, DANIEL MOSKOWITZ, INTERO REAL ESTATE SERVICES, INC., and DOES 1-10.<br><br>          Defendants.. | **Case No. 5:15-CV-04871-BLF**<br><br>**PLAINTIFFS OPPOSITION TO DEFENDANTS INTERO REAL ESTATE SERVICES, INC. AND DANIEL MOSKOWITZ'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6).**<br><br>Date: March 24, 2016<br>Time: 9:00 A.M.<br>Dept.: Courtroom 3 – 5th Floor<br>Judge: Hon. Beth Labson Freeman, U.S.D.C. |

# TABLE OF CONTENTS

I    INTRODUCTION ............................................................................................................. 1
II   RELEVANT FACTS AND PROCEDURAL BACKGROUND ........................................... 1
III  LEGAL STANDARD ...................................................................................................... 2
IV   ARGUMENT ................................................................................................................. 3
   A. PLAINTIFFS' FIRST THREE CLAIMS FOR RELIEF ARE NOT BARRED BY ANY
      EXEMPTION AND HAVE BEEN ADEQUATELY PLED. ................................................. 3
      1. Defendants Are Not Exempt from Coverage Under Federal Fair Housing Laws........... 3
      2. Defendants are Likewise Not Exempt from the Fair Employment and Housing Act
         Under Its Exemption for a Single Lodger Renting a Single Room in an Owner-
         Occupied Home. .................................................................................................... 5
      3. Plaintiffs' Claims Regarding Defendants' Discriminatory Statements and Interference
         With Their Fair Housing Rights Should Not Be Dismissed............................................ 6
   B. PLAINTIFFS HAVE STATED A CLAIM FOR CONSPIRACY TO VIOLATE CIVIL
      RIGHTS ........................................................................................................................ 7
   C. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE CALIFORNIA
      DISABLED PERSONS ACT, CAL. CIV. CODE § 54.1 ...................................................... 11
   D. THE CIVIL RIGHTS ACT, (CAL. CIVIL CODE § 51), APPLIES TO INTERO AND
      MR. MOSKOWITZ AS AGENTS OF MS. RAY, AND AS A REAL ESTATE
      BROKERAGE BUSINESS AND ITS EMPLOYEE.......................................................... 12
   E. PLAINTIFFS HAVE ADEQUATELY STATED CLAIMS FOR THEIR SEVENTH
      THROUGH ELEVENTH CAUSES OF ACTION. .......................................................... 13
   F. PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER CALIFORNIA'S
      UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200). ..................... 15
   G. PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF FOR INTENTIONAL
      INFLICTION OF EMOTIONAL DISTRESS ............................................................... 16
   H. PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF FOR INTENTIONAL
      MISREPRESENTATION (FRAUD)............................................................................. 17
   I. PLAINTIFFS HAVE STATED CLAIMS FOR RELIEF FOR NEGLIGENCE AND
      NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ......................................... 19
      1. Plaintiffs Have Stated a Claim for Negligence........................................................... 19
      2. Plaintiffs Have Stated a Claim For Negligent Infliction of Emotional Distress. ........... 21
   J. PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF FOR CONVERSION............. 23
   K. SHOULD THE COURT DETERMINE THAT PLAINTIFFS' FAILED TO PROPERLY
      ALLEGE ANY OF THE CLAIMS ABOVE, IT SHOULD GRANT THEM LEAVE TO
      AMEND ....................................................................................................................... 24
V.   CONCLUSION............................................................................................................... 24

Case No.15-CV-04871-BLF

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Federal Cases**

*Abrams v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982) ................................................ 11

*Balvage v. Ryderwood Improvement & Serv. Ass'n, Inc.*, 642 F.3d 765 (9th Cir. 2011) .............. 4

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ................................. 10

*Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336 (9th Cir. 1996) .................................. 3

*Chaudhry v. City of L.A.*, 573 Fed. Appx. 628 (9th Cir. 2014) .................................. 27

*Chew v. Hybl*, 1997 U.S. Dist. LEXIS 24547 (N.D. Cal. Dec. 9, 1997) ........................... 4

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ............................................. 23

*Fitzpatrick v. Town of Falmouth*, 321 F. Supp. 2d 119 (D. Me. 2004) ........................... 11

*Freyre v. Hillsborough County Sheriff's Office*, 2014 U.S. Dist. LEXIS 168687
   (M.D. Fla. Dec. 4, 2014) ................................................................... 11

*Goldman v. Standard Ins. Co.*, 341 F.3d 1023 (9th Cir. 2003) .................................. 18

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ............................................... 9, 12

*Harris v. Amgen, Inc.,* 717 F.3d 1042 (9th Cir. 2013) ......................................... 3

*Henson v. City of Gadsen*, 30 BNA 776, 2014 U.S. Dist. LEXIS 87477
   (N.D. Ala. June 27, 2014) .................................................................. 12

*Hous. Rights Ctr., Inc. v. Moskowitz*, 2004 U.S. Dist. LEXIS 28885
   (C.D. Cal. Sept. 20, 2004) ................................................................. 18

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ...................................... 21

*Lake v. Arnold*, 112 F.3d 682, (3rd Cir. 1997) ............................................... 11

*Larson v. Miller*, 55 F.3d 1343 (8th Cir. 1995) ............................................. 11

*Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) ....................... 9, 12

*Lilley v. Charren*, 936 F. Supp. 708 (N.D. Cal. 1996) ........................................ 28

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ............................................... 3

*Maynard v. City of San Jose*, 37 F. 3d 1396 (9th Cir. 1994) .................................. 10

*Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517 (9th Cir. 1994) ......................... 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rodriguez v. Morgan*, 2012 U.S. Dist. LEXIS 9643 (C.D. Cal., Jan. 26, 2012) .......................... 14

*Scott v. Ross*, 140 F.3d 1275 (9th Cir. 1998) *rehearing den.*,

   151 F.3d 1247 (9th Cir. 1998) ................................................................... 9, 13

*Sever v. Alaska Pulp Corp.,* 978 F 2d 1529 (9th Cir. 1992) ....................................... 10

*Singleton v. Gendason*, 545 F.2d 1224 (9th Cir. 1976) ....................................... 4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................... 2

*Stevens v. Tillman*, 855 F.2d 394 (7th Cir. 1988) ............................................ 12

*Trautz v. Weisman*, 819 F. Supp. 282 (S.D.N.Y.1993)................................... 11

*United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)..... 21

*United States v. City of Hayward*, 36 F.3d 832 (9th Cir. 1994)................................. 4, 8

*United States v. Pospisil*, 127 F. Supp. 2d 1059 (W.D. Mo. 2000) ........................... 7

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987)................................... 3

*Ward v. Equal Employment Opportunity Comm'n,* 719 F.2d 311 (9th Cir. 1983) ................ 9

*Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845 (N.D. Ill. 2003) ........................... 7

*Zuch v Hussey*, 366 F Supp. 553 (E.D. Mich. 1973) ...................................... 14

## State Cases

*Agarwal v. Johnson*, 25 Cal.3d 932 (1979) ............................................... 19

*Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133 (1981)...................... 23

*Berryman v. Merit Property Management, Inc.,* 152 Cal. App. 4th 1544 (2007) .............. 18

*Bundren v. Superior Court*, 145 Cal. App. 3d 784 (1983) ................................. 19

*Burgess v. Superior Court*, 2 Cal.4th 1064 (1992) ...................................... 25

*Burlesci v. Petersen*, 68 Cal. App. 4th 1062 (1998) ..................................... 27

*Christensen v. Superior Court*, 54 Cal. 3d 868 (1991) .................................. 19

*Cooper v. Superior Court*, 153 Cal.App.3d 1008 (1984) ................................. 25

*Doe v. Sup. Ct.*, 237 Cal. App. 4th 239 (2015) ......................................... 23

*Douglas v. State of California*, 48 Cal.App.2d 835 (1942) ............................... 8

*Hailey v. California Physicians' Service*, 158 Cal. App. 4th 452 (2007)............... 19, 20

Case No.15-CV-04871-BLF

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

*Hankins v. El Torito Rests.*, 63 Cal. App. 4th 510 (1998) ........................................................ 13

*Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591 (1979) ............................................ 27

*Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124 (1993) .................................... 25

*Igauye v. Howard*, 114 Cal. App. 2d 122 (1952) ..................................................................... 27

*John R. v. Oakland Unified School Dist.*, 48 Cal.3d 438 (1989) ............................................ 23

*L.A. Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal. App. 4th 803 (2015) ..................... 23

*Lee v. O'Hara*, 57 Cal. 2d 476, 478 (1962) ............................................................................ 15

*Manderville v. PCG & S Group, Inc.*, 146 Cal. App. 4th 1486 (2007) ................................. 21

*Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721 (1982) ........................................................... 15

*Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916 (1980)............................................. 26

*Nativi v. Deutsche Bank National Trust Co.*, 223 Cal. App. 4th 261 (2014).......................... 16, 17

*People ex rel. City of Santa Monica v. Gabriel*, 186 Cal. App. 4th 882 (2010) ........................... 18

*Quezada v. Hart*, 67 Cal. App. 3d 754 (1977) ...................................................................... 25

*Sabi v. Sterling*, 183 Cal. App. 4th 916 (2010) ................................................................. 8, 14

*Stoiber v. Honeychuck*, 101 Cal. App. 3d 903 (1980) ............................................. 16, 17, 19, 20

*Swann v. Burkett*, 209 Cal. App. 2d 685 (1962) .................................................................... 15

*Tooke v. Allen*, 85 Cal.App.2d 230, 239 (1948) ..................................................................... 17

*Wagner v. O'Bannon*, 274 Cal. App. 2d 121 (1969).............................................................. 15

*Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652 (2013) ................................................... 19

**Statutes**

29 U.S.C. § 794 ........................................................................................................................ 9

42 U.S.C. § 12101(a) ............................................................................................................... 9

42 U.S.C. § 1983 ...................................................................................................................... 7

42 U.S.C. § 1985 .................................................................................................................. 7, 9

42 U.S.C. § 3604 ......................................................................................................... 4, 6, 7, 12

42 U.S.C. § 3617 .................................................................................................................. 6, 7

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

42 U.S.C. §§ 12101 – 12213 ........................................................................................ 9

42 U.S.C. §§ 1997 – 1997j ........................................................................................... 9

42 U.S.C. §§ 3601-3617 .............................................................................................. 9

Cal. Bus. & Prof. Code § 17200 ................................................................................ 15

Cal. Civ. Code § 54.1 ........................................................................................... 11, 12

Cal. Civil Code § 51 ................................................................................................... 13

Cal. Gov't Code § 12929 .............................................................................................. 5

Cal. Gov't Code § 12955 ..................................................................................... 6, 7, 12

Cal. Gov't Code § 12955.7 ....................................................................................... 6, 7

Cal. Gov't. Code § 12927 ...................................................................................... 5, 12

**Regulations**

24 C.F.R. 100.75(b) ...................................................................................................... 6

24 C.F.R. 100.75(c) ...................................................................................................... 6

**Rules**

Fed. R. Civ. P. 5(a)(1) .................................................................................................. 3

Fed. R. Civ. P. 9(b) .................................................................................................... 21

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I       INTRODUCTION

John Fung and Lynette Mason brought their complaint against Patrice Johnson Ray, Daniel Moskowitz and Intero Real Estate Services, Inc. ("Intero") for their unlawful and conspiratorial discriminatory and illegal acts concerning Mr. Fung and Ms. Mason's tenancy at 7132 Via Carmela in San Jose. Because of Defendants outrageous and discriminatory actions, Plaintiffs have been made homeless and are living on the streets. Plaintiffs have more than adequately pled facts supporting each and every one of the seventeen causes of action Defendants Intero and Moskowitz now seek to dismiss. Because Plaintiffs' complaint is adequately pled and Defendants' motion is procedurally flawed, the Court should deny Defendants' motion in its entirety.

# II       RELEVANT FACTS AND PROCEDURAL BACKGROUND

Plaintiffs John Fung and Lynette Mason moved into 7132 Via Carmela in San Jose ("the Property") on or about March 6, 2015. (Compl. ¶ 16). They had been homeless for the previous four years and had only recently received a Housing Choice Voucher which enabled them to rent a home. (Compl. ¶¶ 17, 19). When they moved into the Property, they made repairs to the garage in order to insure that they could secure a lease contract and use their voucher. (Compl. ¶¶ 20-21). On April 16, 2015, they signed a lease with Ms. Ray, the owner of the property, which entitled them to possession of the entire house. (Compl. ¶ 25).

Less than one week after signing that lease, Ms. Ray engaged the services of Defendants Daniel Moskowitz and Intero to market and sell the Property. (Compl. ¶ 36). Mr. Moskowitz is a licensed real estate sales person and employee of Intero. (Compl. ¶¶ 8-10). In addition to his role as agent for the sale of the Property, Mr. Moskowitz also became the *de facto* property manager for Ms. Ray: he told Mr. Fung that Mr. Fung must clean up and vacate the Property while it was being shown; he instructed Mr. Fung to leave the property and stay in a hotel for one week; and he advised Ms. Ray to evict Mr. Fung. (Compl. ¶¶ 41-43). Mr. Moskowitz also called Mr. Fung's and Ms. Mason's case worker at Catholic Charities and informed her that the Plaintiffs could no longer live at the Property. (Compl. ¶ 44).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Later, when Defendants refused to allow Mr. Fung and Ms. Mason to return to the Property, Mr. Moskowitz acted as an agent for Defendant Ray in discussions with Plaintiffs' prior counsel, Kara Brodfuehrer. (Compl. ¶ 49). Mr. Moskowitz told Ms. Brodfuehrer that Defendants had breached the lease they had signed with Plaintiffs because Mr. Fung and Ms. Mason were "crazy" and that Mr. Moskowitz could not sell the property with "someone like Johnny living there." (Compl. ¶ 49). He further stated that it was "obvious [Mr. Fung] had some issues." (Compl. ¶ 49). Throughout several conversations with Ms. Brodfuehrer, Mr. Moskowitz repeated that he was the person she should be "dealing with" about the Plaintiffs' tenancy at the Property. *Id.* On his and Ms. Ray's behalf, and while Ms. Ray was on the phone call, Mr. Moskowitz negotiated an agreement with Plaintiffs that, in consideration for Plaintiffs' foregoing their lease with Defendants, Defendants would allow Mr. Fung and Ms. Mason to continue living at the Property rent-free for two months and would return their full security deposit, as well as an additional $1,000. (Compl. ¶¶ 52-54).

However, Defendants never intended to keep any promise that they had made; Mr. Fung and Ms. Mason were again forcibly locked out of the property, abused by Defendants, deprived of nearly all of their personal possessions, and made homeless once again. (Compl. ¶¶ 55-62). Mr. Moskowitz refused to return Plaintiffs' personal property and has never paid them any of the money that was promised. (Compl. ¶ 58-59).

Plaintiffs filed their complaint on October 22, 2015. All Defendants were served with the Complaint in early November 2015. See Docket #s 17-19. By agreement with Intero's counsel, Plaintiffs allowed Intero and Mr. Moskowitz until December 14, 2015, to file dispositive motions. *Id.* Defendants Intero and Moskowitz filed a Motion to Dismiss on that day. Docket #12. However, Mr. Moskowitz and Intero apparently failed to serve Ms. Ray a copy of the motion and its accompanying memorandum. Proof of Service, Docket # 15.

### III   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court must deny a motion to dismiss if the allegations in the complaint and information from other permissible sources "plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Harris v.*

*Amgen, Inc.,* 717 F.3d 1042, 1035 (9th Cir. 2013). The issue presented by such a motion is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds); *Davis v. Scherer*, 468 U.S. 183 (1984).

The Court must construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in plaintiff's favor. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Courts must assume that all general allegations embrace whatever specific facts might be necessary to support them. *Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir. 1994).

If the Court dismisses any claim for relief, it must then consider whether to grant leave to amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## IV     ARGUMENT

Defendants Intero's and Moskowitz's Motion to Dismiss should be denied in its entirety. Defendants' motion is procedurally defective and was not served on the third Defendant, Patrice Johnson Ray as required by Fed. R. Civ. P. 5(a)(1). Furthermore, as argued below, Mr. Fung and Ms. Mason have adequately pled each claim Defendants seek to dismiss. Plaintiffs will address each of Defendants' arguments in turn.

### A.  PLAINTIFFS' FIRST THREE CLAIMS FOR RELIEF ARE NOT BARRED BY ANY EXEMPTION AND HAVE BEEN ADEQUATELY PLED.

#### 1.  Defendants Are Not Exempt from Coverage Under Federal Fair Housing Laws.

Defendants Intero and Moskowitz allege that the Property is not subject to the Fair Housing Act, invoking "Mrs. Murphy exemption," codified at 42 U.S.C. § 3603(b)(2). However, this argument is unavailing. The exemption of 42 U.S.C. § 3603(b)(2) applies only to the rental of "rooms or units in dwellings containing living quarters occupied or intended to be occupied by

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence." "Exemptions from the Fair Housing Act are to be construed narrowly, in recognition of the important goal of preventing housing discrimination." *United States v. City of Hayward*, 36 F.3d 832, 837 (9th Cir. 1994); *Balvage v. Ryderwood Improvement & Serv. Ass'n, Inc.*, 642 F.3d 765, 776 (9th Cir. 2011). Furthermore, "defendants bear the burden of proving that [the Mrs. Murphy] exemption applies to them." *Chew v. Hybl*, 1997 U.S. Dist. LEXIS 24547, at *8 (N.D. Cal. Dec. 9, 1997) (citing *Singleton v. Gendason*, 545 F.2d 1224, 1226 (9th Cir. 1976)).

Here, according to the written lease executed between Ms. Ray and Plaintiffs, Ms. Ray rented the entire home, not just rooms, to Mr. Fung and Ms. Ray. (Compl. ¶ 25.) Based on this lease, Ms. Ray received a rent payment from Housing Trust Silicon Valley, which Ms. Ray accepted. (Compl. ¶¶ 33, 39.) The Mrs. Murphy exemption is intended to apply only when the property owner makes her home at the subject property and was intended to protect the property owner's First Amendment rights of intimate association. *See, e.g.*, James D. Walsh, *Reaching Mrs. Murphy: A Call for Repeal of the Mrs. Murphy Exemption to the Fair Housing Act*, 34 Harv. C.R.-C.L. L. Rev. 605, 607-610 (1999) (discussing the legislative history of the exemption). Ms. Ray's living at the Property was inconsistent with the written lease that she herself signed. While Ms. Ray refused to deliver the entire house to the Plaintiffs despite her written agreement to do so, such fraudulent and illegal conduct cannot exempt her—or her fellow Defendants—from their duty not to discriminate under the Fair Housing Act. (Compl. ¶28). Taking all facts in the light most favorable to the Plaintiffs, and drawing all inferences in their favor, the contract to lease the entire premises creates a triable issue of fact as to whether the house is subject to the exemption of 42 U.S.C. § 3603(b)(2), and therefore Plaintiffs' claims pursuant to 42 U.S.C. § 3604(f) should not be dismissed at this stage.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

2.  **Defendants are Likewise Not Exempt from the Fair Employment and Housing Act Under Its Exemption for a Single Lodger Renting a Single Room in an Owner-Occupied Home.**

Discrimination, pursuant to the California Fair Employment and Housing Act (FEHA), "includes the cancellation or termination of a sale or rental agreement" Cal. Gov't. Code § 12927 (c)(1). The crux of Mr. Fung's and Ms. Mason's legal claims is that, for unlawful reasons and in an illegal manner, Defendants terminated their tenancy and evicted them from the Property. Defendants Intero and Moskowitz assert that the Property is exempt from FEHA under section 12927, which exempts a homeowner renting a room in a home where she herself lives from the law's prohibitions against discrimination in the rental of the property, "provided that no more than one roomer or boarder is to live within the household, and the owner complies with subdivision (c) of Section 12955, which prohibits discriminatory notices, statements, and advertisements." Cal. Gov't. Code § 12927(c)(2)(A).

However, the Property is not covered by this exemption.  First, more than one Plaintiff rented the property simultaneously: Mr. Fung and Ms Mason. Second, Plaintiffs have alleged that, pursuant to a written lease, Ms. Ray rented the entire house to Mr. Fung and Ms. Mason; if the lease is taken at face-value, then the Property was not intended to be "owner-occupied" (Compl. ¶ 25). Third, the Complaint clearly states that Ms. Ray was renting the Property to other tenants in addition to Plaintiffs during the time that Plainitffs were living there. (Compl. ¶¶ 34). Lastly, as discussed in greater detail below, Ms. Ray and other Defendants made discriminatory statements in violation of subdivision (c) of section 12955, about Mr. Fung and Ms. Mason to other tenants. (Compl. ¶¶ 35, 41-44, 49, 53-54, 56). Therefore Plaintiffs' claims under FEHA cannot be dismissed.

Defendants have also failed to properly aver the relevant definition of "owner" under FEHA. An "owner . . . includes the lessee, sublessee, assignee, managing agent, real estate broker or salesperson, or any person having any legal or equitable right of ownership or possession or the right to rent or lease housing accommodation." Cal. Gov't Code § 12929(e). Here, it is undisputed that Mr. Moskowitz is a real estate salesperson and Intero is a real estate broker. Also, Plaintiffs have adequately pled that Mr. Moskowitz became the property manager

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1

2
and rental agent of Ms. Ray by virtue of his instructions to Ms. Ray to remove Ms. Fung and Ms.

3
Mason from the property because he perceived them to be "crazy" and by virtue of his insistence

4
that Ms. Brodfuehrer should be "dealing with" him concerning the Plaintiffs' tenancy. (Compl.

5
¶¶ 42-44, 49, 52-54). Plaintiffs have more than adequately pled claims for relief against

6
Defendants for violations of FEHA.

7
### 3. Plaintiffs' Claims Regarding Defendants' Discriminatory Statements and Interference With Their Fair Housing Rights Should Not Be Dismissed.

8
Even if the exemptions to state and federal fair housing laws cited by Defendants Intero

9
and Moskowitz did apply in the instant case, Plaintiff's claims pursuant to 42 U.S.C. § 3604(c),

10
42 U.S.C. § 3617 and Cal. Gov't Code §§ 12955(c), 12955(f), and 12955.7 would still be valid.

11
Even defendants who are otherwise exempt from the requirements of fair housing laws are still

12
liable for discriminatory statements and interference with a plaintiff's fair housing rights under

13
these code sections.

14
Under federal law, the exemption in 42 U.S.C. § 3603(b) does not extend to

15
discriminatory statements made in violation of 42 U.S.C. § 3604(c) or claims of interference

16
and/or intimidation of Plaintiffs in violation of 42 U.S.C. § 3617. 42 U.S.C. § 3603(b)("Nothing

17
in section 3604 of this title (other than subsection (c)) shall apply to . . ."); *Whisby-Myers v.*

18
*Kiekenapp*, 293 F. Supp. 2d 845, 851 (N.D. Ill. 2003) ("First of all, this exemption [in § 3603(b)]

19
is limited to section 3604, and would not preclude Plaintiffs' claim under section 3617."); *United*

20
*States v. Pospisil*, 127 F. Supp. 2d 1059, 1064 (W.D. Mo. 2000). Contrary to Defendants'

21
assertion, discriminatory statements include "all written or oral notices or statements by a person

22
engaged in the sale or rental of a dwelling" 24 C.F.R. 100.75(b). Discriminatory statements

23
include, but are not limited to "Using words, phrases, . . . which convey that dwellings are

24
available or not available to a particular group of persons because of . . . sex, handicap. . . . (2)

25
Expressing to agents, brokers, employees, prospective sellers or renters **or any other persons** a

26
preference for or limitation on any purchaser or renter because of . . . sex, handicap . . . of such

27
persons." 24 C.F.R. 100.75(c) (emphasis added). Ms. Ray made discriminatory statements to

28
Plaintiffs and other tenants at the property. (Compl. ¶¶ 35, 56). Mr. Moskowitz made

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

discriminatory statements to the Plaintiffs' prior attorney; he also made discriminatory statements to Plaintiffs and their caseworker, Elizabeth Kerrigan. (Compl. ¶¶ 41-44, 49, 53-54). Because defendants' discriminatory statements are not exempted, Plaintiffs' claims pursuant to 42 U.S.C. § 3604(c) cannot be dismissed.

Ms. Ray's and Mr. Moskowitz's discriminatory statements also violate Cal. Govt. Code § 12955(c). Under California law, "When state law is identical or similar to federal legislation, federal decisions are a guide to the interpretation of state law." *Sabi v. Sterling*, 183 Cal. App. 4th 916, 943 (2010) (citing *Douglas v. State of California*, 48 Cal.App.2d 835, 838 (1942)). Here, because the statements cited above are discriminatory under federal law, those statements are likewise discriminatory under California law. Therefore Plaintiffs claims under Cal. Govt. Code §12955(c) cannot be dismissed.

Furthermore, Defendants' acts interfered with and intimidated Plaintiffs in the assertion of their rights under 42 U.S.C. § 3604 and Cal. Gov't. Code § 12955.7. "The language 'interfere with' has been broadly applied 'to reach all practices which have the effect of interfering with the exercise of rights' under the federal fair housing laws." *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994). Defendants unlawfully locked Mr. Fung and Ms. Mason out of their house, deprived them of their property, then after they affirmed their rights through counsel, locked them out again and converted their possessions. (Compl. ¶¶ 41-59). Because neither Defendants' violations of 42 U.S.C. § 3617 nor Cal. Gov't. Code § 12955.7 are exempted, the Plaintiffs claims cannot be dismissed.

## B.  PLAINTIFFS HAVE STATED A CLAIM FOR CONSPIRACY TO VIOLATE CIVIL RIGHTS

Plaintiffs have clearly stated a claim for conspiracy to violate their civil rights under 42 U.S.C. § 1985(3). Defendants are wrong that Plaintiffs need to allege a constitutional violation by a state actor and erroneously cite cases relevant only to 42 U.S.C. § 1983, which governs constitutional torts by state actors. Federal law, under 42 U.S.C. § 1985(3), provides relief against private actors who have conspired to violate civil rights.  Under this section, in order to state a claim of conspiracy to violate civil rights by private parties . . .

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1

2    . . . a complaint must allege that the defendants did (1) "conspire . . . ." (2) "for

3    the purpose of depriving, either directly or indirectly, any person or class of

     persons of the equal protection of the laws, or of equal privileges and immunities

4    under the laws." It must then assert that one or more of the conspirators (3) did, or

5    caused to be done, "any act in furtherance of the object of (the) conspiracy,"
     whereby another was (4a) "injured in his person or property" or (4b) "deprived of

6    having and exercising any right or privilege of a citizen of the United States."

7    *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 502 (9th Cir. 1979) (quoting *Griffin v.*

8    *Breckenridge*, 403 U.S. 88, 102-03 (1971)). "'A conspiracy can be inferred from conduct and

9    need not be proven by evidence of an express agreement.'" *Scott v. Ross*, 140 F.3d 1275, 1284

10   (9th Cir. 1998) *rehearing den.*, 151 F.3d 1247 (9th Cir. 1998) (quoting *Ward v. Equal*

11   *Employment Opportunity Comm'n,* 719 F.2d 311, 314 (9th Cir. 1983)). As discussed in detail

12   below, Plaintiffs have sufficiently pled that Defendants conspired to violate their civil rights

     under section 1985(3).

13
     Defendants conspired to violate Plaintiffs' rights because of their disabilities or perceived
14
     disabilities. As the Supreme Court has noted:
15
          [I]n order to prove a private conspiracy in violation of the first clause of §
16        1985(3), a plaintiff  must show, inter alia, (1) that "some racial, or perhaps
          otherwise class-based, invidiously discriminatory animus [lay] behind the
17        conspirators' action," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 29 L. Ed. 2d 338,
          91 S. Ct. 1790 (1971), and (2) that the conspiracy "aimed at interfering with
18        rights" that are "protected against private, as well as official, encroachment,"
          *Carpenters v. Scott*, 463 U.S. 825, 833, 77 L. Ed. 2d 1049, 103 S. Ct. 3352
19        (1983).

20   *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-268 (1993). Admittedly, it is

21   undecided in this Circuit whether people with disabilities are a covered class under section 1985.

22   However, in *Sever v. Alaska Pulp Corp.*, the Ninth Circuit explained that a class of persons is

23   covered . . .

          . . . when the class in question can show that there has been a governmental determination
24        that its members "require and warrant special federal assistance in protecting their civil
          rights." *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985) (quoting *DeSantis v.*
25        *Pacific Telephone & Telegraph Co.*, 608 F.2d 327, 333 (9th Cir.1979)). More
          specifically, we require "either that the courts have designated the class in question a
26        suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress
          has indicated through legislation that the class required special protection." *Id.*
27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

978 F.2d 1529, 1536 (9th Cir. 1992); *see also Maynard v. City of San Jose*, 37 F. 3d 1396, 1403 n. 4 (9th Cir. 1994) (looking to Title VII to determine whether plaintiff was a member of a protected class). Here, as persons with mental health disabilities, Plaintiffs are members of a class that requires and warrants special federal assistance in protecting their civil rights. (Compl. ¶¶ 5, 6). Congress has indicated through a number of laws that people with disabilities require special protection of their civil rights. *See, e.g.,* 42 U.S.C. §§ 3601-3617 (Fair Housing Amendments Act, prohibiting housing discrimination against people with disabilities); 42 U.S.C. §§ 12101 – 12213 (Americans with Disabilities Act); 42 U.S.C. §§ 1997 – 1997j (protecting "mentally ill, disabled, or handicapped" people from violations of federal law in institutional facilities); 29 U.S.C. § 794 (preventing discrimination against persons with disabilities from any institution receiving federal funding). In fact, in passing the Americans with Disabilities Act, Congress explicitly found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem," that individuals with disabilities "continually encounter various forms of discrimination, including outright intentional exclusion" and "discrimination against individuals with disabilities persists in such critical areas as . . . housing." 42 U.S.C. § 12101(a). Because Congress has indicated that people with disabilities, including those with mental health disabilities, warrant special protection, and, given the Ninth Circuit's guidance in this matter, the Court should follow the determinations of other circuits and district courts in other circuits and find that people with mental health disabilities are a class of persons whose civil rights are protected by section 1985(3). *Abrams v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982) *vacated in part on other grounds*, 718 F .2d 22 (2nd Cir. 1983)(holding that people with mental health disabilities are protected by § 1985); *Lake v. Arnold*, 112 F.3d 682 (3rd Cir. 1997) (holding that people with mental health disabilities who were involuntarily sterilized were protected by § 1985(3)); *Larson v. Miller*, 55 F.3d 1343, 1352-53 (8th Cir. 1995)(holding that young girls with disabilities were protected under § 1985(3)) *vacated on other grounds and different results reached* 76 F.3d 1446 (8th Cir. 1996 en banc); *Trautz v. Weisman,* 819 F. Supp. 282, 290-91 (S.D.N.Y.1993) (holding

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that, with passage of the ADA, a class of individuals with disabilities may be protected by § 1985(3)); *Fitzpatrick v. Town of Falmouth*, 321 F. Supp. 2d 119, 124 (D. Me. 2004) (following the reasoning of the Second and Eighth Circuits to extend coverage to people with disabilites); *Freyre v. Hillsborough County Sheriff's Office*, 2014 U.S. Dist. LEXIS 168687, 32-34 (M.D. Fla. Dec. 4, 2014) (assuming people with disabilities are a protected class); *Henson v. City of Gadsen*, 30 BNA 776, 2014 U.S. Dist. LEXIS 87477 (N.D. Ala. June 27, 2014) (same); *but see Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (stating that people with disabilities are not protected); *D'Amato v. Wisconsin Gas Co*., 760 F.2d 1474, 1486-87 (7th Cir. 1985) (finding that people with handicaps are not protected); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir. 1983)(refusing to expand § 1985 classes beyond race).

Additionally, Plaintiffs have alleged that the conspiracy was to deprive them of "equal protection of the laws, or of equal privileges and immunities under the laws." *Griffin*, 403 U.S. at 103-104. The violation need not be of the U.S. Constitution, because violations of "state conferred rights and privileges, are sufficient to constitute a deprivation of 'equal protection of the laws.'" *Reichardt*, 591 F.2d at 505 (9th Cir. 1979) (holding a conspiracy to violate the Unruh Act (Cal. Civ. Code § 51) sufficient for § 1985(3)). Additionally, a plaintiff may show that defendants conspired to deprive her of "a right independently secured by state or federal law and then show (if only state law is at issue) that the offense deprives him of a right secured by a federal rule designed for the protection of all." *Stevens v. Tillman*, 855 F.2d 394, 404 (7th Cir. 1988) (internal citations omitted). Mr. Fung and Ms. Mason claim that Defendants conspired to violate federal and state fair housing laws, California's Unruh Civil Rights Act, the  California Disabled Persons Act, and state laws protecting tenants from unlawful eviction and the right to be secure in their property all because of Plaintiffs' are people with disabilities. (Compl. ¶¶ 71-183). These are rights secured by state and federal law as well as federal rules designed for the protection of all.

In sum, Plaintiffs have adequately pled facts alleging a conspiracy to violate their civil rights. Plaintiffs have alleged that Ms. Ray and Mr. Moskowitz conspired to breach their lease and remove Mr. Fung and Ms. Mason from the property illegally and in violation of state and

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

federal law. (Compl. ¶ 25,36, 41-49, 52-54, 55, 57-63). They have also alleged that the conspirators' illegal actions were motivated by Mr. Fung's and Ms. Mason's mental health disabilities. (Compl. ¶¶ 35, 42, 44, 49). Intero is directly or vicariously liable under section 1985(3) for any of its acts as well as the acts of its employee, Mr. Moskowitz. *Scott,* 140 F.3d at 1284. Both Mr. Moskowitz and Ms. Ray took acts in furtherance of the conspiracy by forcing Mr. Fung out of his home, subsequently locking both Mr. Fung and Ms. Mason out of the house, and then promising in bad faith to allow them to return to the Property. (Compl. ¶¶ 41-59). Finally, Plaintiffs were injured in both person and property by being made homeless, loss of almost all of their personal possessions and being threatened with the loss of their Housing Choice Voucher. (Compl. ¶¶ 61-64). Taking the allegations as true and drawing all inferences in favor of the Plaintiffs as the Court must, Plaintiffs have alleged that there was a conspiracy to deprive them of rights secured under federal and State law, that conspiracy was because of their membership in a protected class (disabled), that Defendants acted in furtherance of the conspiracy, and that Plaintiffs were injured. Therefore, Plaintiffs' Fourth Claim for relief should not be dismissed.

## C. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT, CAL. CIV. CODE § 54.1

California's Disabled Person's Act provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(b)(1). Many courts have recognized that California's disability access laws manifest a legislative intent to afford broad protection and incentivize compliance in order to achieve access for people with disabilities. *Hankins v. El Torito Rests.,* 63 Cal. App. 4th 510, 523 (1998). Civil Code section 54.1 applies to policies as well as to structural impediments. *Id.* at 524.

Courts have found that given the similarities of the language of the California Disabled Persons Act ("CDPA") in the context of reasonable accommodations that both FEHA and the

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1  federal Fair Housing Act (FHA) can be used as guidance in interpreting the Statute. *See, e.g.,*

2  *Rodriguez v. Morgan*, 2012 U.S. Dist. LEXIS 9643 (C.D. Cal., Jan. 26, 2012) (finding that the

3  Court would find that the same four elements under FEHA criteria can establish a refusal to

4  provide reasonable accommodation claim for the DPA).; *Sabi*, 183 Cal. App. 4th at 943 (2010)

5  (applying federal decisions to state law).

6          Thus the Court should review the CDPA using FHA and FEHA as guidance. As

7  explained above, cancellation or termination of a rental agreement constitutes discrimination

8  under FEHA. Cal. Gov't Code § 12927(c)(1). Both FEHA and FHA prohibit real estate agents

9  from discriminating in the sale or rental of a dwelling. 42 U.S.C. § 3604; Cal. Gov't Code §

10 12955(i); *see also Zuch v Hussey*, 366 F Supp. 553, 557 (E.D. Mich. 1973) ("Steering or action

11 by real estate agent impeding, delaying, or discouraging prospective home buyer from

12 purchasing housing in particular area on racial basis is unlawful under 42 USCS § 3604(a).") The

13 CDPA ensures that persons with "disabilities shall be entitled to full and equal access, as other

14 members of the general public, to all housing accommodations offered for rent, lease, or

15 compensation in this state, subject to the conditions and limitations established by law, or state or

16 federal regulation, and applicable alike to all persons" Cal. Civ. Code § 54.1(b)(1). Plaintiffs'

17 complaint sufficiently alleges facts which show that Defendants Intero and Moskowitz violated

18 the CDPA by requiring Mr. Fung to vacate the house before showing the home to prospective

19 purchasers, by making statements regarding Mr. Fung's and Ms. Mason's disabilities, and by

20 encouraging Defendant Ray to evict Plaintiffs because of Plaintiffs' disabilities or perceived

21 disabilities. (Compl.¶¶ 41, 43, 49). Therefore Plaintiffs' CDPA claim should not be dismissed.

22 **D.  THE CIVIL RIGHTS ACT, (CAL. CIVIL CODE § 51), APPLIES TO INTERO
    AND MR. MOSKOWITZ AS AGENTS OF MS. RAY, AND AS A REAL ESTATE
    BROKERAGE BUSINESS AND ITS EMPLOYEE.**

23
24
25         Defendants Intero and Moskowitz assert that Plaintiffs have not stated a claim against

26 them under the Unruh Act, California Civil Code section 51, because the "alleged civil rights

27 violations stem from a single residence that was privately-owned by one individual, Ms. Ray"

28 and that there are no allegations that "the home is a business organization. . . ." (Def. Memo at

10:11-12, 10:14). However, it is well established that Cal. Civil Code § 51 applies to real estate

transactions, including the business of renting privately-owned housing accommodations.

*Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982) ("(T)he provisions of the Unruh Act,

in light of its broad application to "all business establishments", have been held to apply with full

force to the business of renting housing accommodations."); *Swann v. Burkett*, 209 Cal. App. 2d

685 (1962) (holding that owners who rented out a private triplex unit for gain were subject to the

Unruh Act, even though they employed no persons to assist them in the rental or maintenance of

the property and maintained no office). The Unruh Act applies to Defendant Ray, who

maintained a business relationship with Plaintiffs by renting out her home to them, and therefore

applies to Defendants Intero and Moskowtiz as her agents.

Moreover, California Civil Code section 51 applies directly to Defendant Intero as a real

estate brokerage firm, and to Defendant Moskowitz as its employee. Real estate brokerage

businesses are business establishments within the meaning of the Unruh Act. *Lee v. O'Hara*, 57

Cal. 2d 476, 478 (1962) ("The office which a real estate broker is required by law to maintain at

a specified location, and from which his business must be transacted, is a business establishment

within the meaning of the Unruh Act."); *Wagner v. O'Bannon*, 274 Cal. App. 2d 121, 125 (1969)

("The business of a real estate broker is subject to the requirements of *Civil Code sections 51* and

*52*."). Because Defendant Moskowtiz was acting in his capacity as an employee of a real estate

broker in violating Cal. Civil Code § 51, this section is directly applicable to him and to

Defendant Intero.

## E.  PLAINTIFFS HAVE ADEQUATELY STATED CLAIMS FOR THEIR SEVENTH THROUGH ELEVENTH CAUSES OF ACTION.

Defendants Moskowitz and Intero claim that because neither Intero nor Mr. Moskowitz

negotiated the lease, between Ms. Ray and the Plaintiffs, and because they are real estate agents--

not "lessors"--they are not subject to liability for Plaintiffs' wrongful eviction or other violations

of landlord-tenant law. (Def. Memo, at 6:20-7:17). However, under California landlord-tenant

law, agents of landlords may be held liable for their torts against residential tenants. *Stoiber v.

Honeychuck*, 101 Cal. App. 3d 903, 929-930 (1980). Moreover, "[i]n recent years, the covenant

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1   of quiet enjoyment has been expanded, and in this state, for example, it insulates the tenant
2   against any act or omission on the part of the landlord, **or anyone claiming under him**, which
3   interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by
4   the tenancy." *Nativi v. Deutsche Bank National Trust Co.,* 223 Cal. App. 4th 261, 291-292 (2014)
5   (emphasis added).

6       Plaintiffs have properly and specifically pled that Intero and Mr. Moskowitz were acting
7   as Defendant Ray's agents. (Compl. ¶¶ 13, 36, 41-44, 49, 52-55, 58-60); *see also* IV.A *supra*.
8   Plaintiffs have also pled that Mr. Moskowitz instructed Plaintiffs' prior counsel to deal with him
9   directly regarding Plaintiffs' tenancy, made statements that tenants needed to "get out" of the
10  Property, and negotiated alternative terms to their tenancy, which included Plaintiffs' right to
11  stay at the property temporarily and Defendants' commitment to "buy" Plaintiffs out of their
12  lease once the property was sold. (Compl. ¶¶ 41-44, 49, 52-55, 58-60). As a result, because
13  Defendants Intero and Moskowitz were the agents of Ray and acted as her agents with respect to
14  Plaintiffs' tenancy, they are liable to Plaintiffs for their role in unlawfully evicting the Plaintiffs,
15  interfering with Plaintiffs quiet enjoyment of the premises, and tenant harassment under
16  California landlord-tenant law. *Stoiber*, 101 Cal. App. 3d at 929-930; *Nativi*, 223 Cal. App. 4th,
17  at 292 (quiet enjoyment) and 294 ("A tenant who is wrongfully evicted by his landlord before the
18  expiration of the lease term may maintain a wrongful eviction action for tort damages and
19  punitive damages, if appropriate."); *Tooke v. Allen*, 85 Cal.App.2d 230, 239 (1948) (holding that
20  a tenant has a cause of action for breach of quiet enjoyment and wrongful eviction where
21  landlord "together with certain of his employees" harassed and interfered with tenants).
22  Therefore Plaintiffs' Seventh, Tenth, and Eleventh claims should not be dismissed.

23      Additionally, Defendants Intero and Moskowitz are liable to Plaintiffs for failure to
24  return their security deposit and breach of the covenant of good faith and fair dealing by virtue of
25  their breaches of the promises made by Mr. Moskowitz. Mr. Moskowitz negotiated with
26  Plaintiffs' prior counsel and made an oral agreement that, in return for Plaintiffs' vacating the
27  property in two months, Plaintiffs would be allowed to stay for those two months rent-free,
28  Defendants would pay Plaintiffs $1,000 cash; and Defendants would return Plaintiffs' personal

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1  property and security deposit in full. (Compl. ¶¶ 52-54). None of those promises were kept, and

2  drawing all inferences in the Plaintiffs' favor, Plaintiffs have pled that Mr. Moskowitz did not

3  intend to keep those promises. (Compl. ¶¶ 55-62). Plaintiffs have stated a claim that Defendants

4  Intero and Moskowitz failed to return their security deposit after promising to do so, and were in

5  privity of contract with Plaintiffs by virtue of the oral agreement.[1] Therefore Plaintiffs' Eighth

6  and Ninth claims should not be dismissed.

7  ### F. PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200).

8  California's Unfair Competition Law, Business and Professions Code section 17200

9  "prohibits any 'unlawful, unfair or fraudulent business act or practice'." *Berryman v. Merit*

10  *Property Management, Inc.,* 152 Cal. App. 4th 1544, 1554 (2007); *see also Goldman v. Standard*

11  *Ins. Co*., 341 F.3d 1023, 1036 (9th Cir. 2003) ("By proscribing any unlawful business practice, §

12  17200 borrows violations of other laws and treats them as unlawful practices that the unfair

13  competition law makes independently actionable") (quoting *Cel-Tech Communications, Inc. v.*

14  *Los Angeles Cellular Tel Co*., 20 Cal.4th 163, 180 (1999)). Claims of housing discrimination

15  constitute illegal and unfair business practices under the statute. *See, e.g., Hous. Rights Ctr., Inc.*

16  *v. Moskowitz*, 2004 U.S. Dist. LEXIS 28885 (C.D. Cal. Sept. 20, 2004) (Court found that the

17  Plaintiffs had sufficiently stated a claim under 17200 for racial and familial status housing

18  discrimination); *People ex rel. City of Santa Monica v. Gabriel*, 186 Cal. App. 4th 882, 888

19  (2010) (Court found that a landlord's sexual harassment of his tenant was made possible by the

20  parties' commercial relationship and occurred only during business-related encounters and as

21  such had an integral connection with commercial activity and constituted business conduct).

22  Here, as discussed in greater detail above, Plaintiffs have pled that Defendants Intero and

23  Moskowitz engaged in unfair business practices by making discriminatory statements about Mr.

24  Fung's mental health disabilities, forcing both Plaintiffs to vacate the property while the property

25  was being shown to prospective purchasers because of their mental health disabilities,

26

27

28

---

[1] Defendants have not raised that Plaintiffs failed to adequately plead the elements of a contract, only that they were not in privity of contract with Plaintiffs, so, in the interest of brevity, Plaintiffs have not addressed this issue.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

negotiating in bad faith with no intention of performing a contract, and illegally and discriminatorily evicting Plaintiffs. (Compl. ¶¶ 41-44, 49, 52-55, 58-60, 142). Taking the facts in the light most favorable to Plaintiffs, Plaintiffs' Thirteenth Claim cannot be dismissed.

### G.  PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to allege a claim for intentional infliction of emotional distress under California law, a plaintiff must plead the following elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991); *see also Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 671 (2013).

Courts have found that a tenant had pled outrageous behavior to satisfy the tort where a landlord insulted and threatened a tenant with physical force in order to induce a tenant to vacate the premises, where a tenant was forced to leave because a landlord increased their rent beyond their ability to pay in retaliation for invoking her right to repair and deduct, and also where a landlord constructively evicted a tenant for failing to maintain a property in a habitable condition. *Stoiber*, 101 Cal. App. 3d at 921-922 (citing *Newby v. Alto Riviera Apartments*, 60 Cal.App.3d 288, 297-298 (1976) and *Aweeka v. Bonds,* 20 Cal.App.3d 278, 281 (1971)).

Further, where the tortious actor has knowledge "that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition," courts are more inclined to find behavior outrageous. *Bundren v. Superior Court*, 145 Cal. App. 3d 784, 790 n.6 (1983) (quoting Restatement (Second) of Torts § 46 cmt. f); *See also, Agarwal v. Johnson*, 25 Cal.3d 932, 946-947 (1979); *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452, 474 (2007).

Here, Defendants not only knew that Plaintiffs suffered from mental health disabilities making them peculiarly susceptible to emotional distress, but those mental health disabilities were also the motivation for Defendants' illegal acts. (Compl. ¶¶ 41-42, 49). Plaintiffs' severe emotional distress was exacerbated by their mental health disabilities, financial insecurity, recent

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

homelessness, and their fear of becoming homeless again; all of these factors were known to or should have been known to Defendants. (Compl. ¶¶ 17, 19, 35, 49, 52-53). Defendants' actions were beyond mere insults and indignities; they intentionally and illegally deprived Plaintiffs of their housing and personal belongings. Defendants, aware of the Plaintiffs' vulnerability, preyed on Plaintiffs' fears by threatening to evict Mr. Fung and Ms. Mason, by illegally locking them out of the house on two separate occasions, by evicting them from the premises, by depriving them of their property, and by making them homeless. (Compl.¶¶ 41-44, 49, 52-55, 58-60, 148). Defendants' conduct rose to the level of "heartless, flagrant, and outrageous" when they provided substandard premises for habitation, threatened to evict and actually evicted Plaintiffs, and converted Plaintiffs' personal property. *See Hailey*, 158 Cal. App. 4th at 474; *Stoiber*, 101 Cal. App. 3d at 921-922.

Plaintiffs have adequately pled their cause of action for intentional infliction of emotional distress. In addition to Defendants' outrageous behavior, Plaintiffs suffered and continue to suffer mental anguish and emotional distress including depression as well as the attendant physical injuries and conditions because of their housing situation, and that their pre-existing mental health issues have been exacerbated and made worse. (Compl. ¶ 64). Defendants'outrageous conduct is the actual and proximate cause of their extreme emotional distress, their constant depression, and the exacerbation of their pre-existing mental health issues. (Compl. ¶ 150). As discussed in greater detail above, Mr. Moskowitz and Intero were the agents of Ms. Ray and Mr. Moskowitz excluded Plaintiffs from the Property on more than one occasion. (Compl. ¶¶ 41-42, 49); IV.A and IV.E *supra*. Therefore, Plaintiffs' Fourteenth Claim for Intentional Infliction of Emotional Distress against all Defendants should not be dismissed.

## H.  PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION (FRAUD)

Fraud claims are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (a plaintiff alleging fraud must state with particularity the circumstances constituting fraud). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well

1

2     as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."

3     *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.

4     2011).  To state a claim for intentional misrepresentation under California law, a plaintiff must

5     plead seven elements with particularity: (1) the defendant represented to the plaintiff that an

6     important fact was true; (2) that representation was false; (3) the defendant knew that the

7     representation was false when the defendant made it, or the defendant made the representation

8     recklessly and without regard for the truth; (4) the defendant intended that the plaintiff rely on

9     the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was

10    harmed; and (7) the plaintiff's reliance on the representation was a substantial factor in causing

11    that harm to the plaintiff. *Manderville v. PCG & S Group, Inc.*, 146 Cal. App. 4th 1486, 1498

12    (2007).

13            Here, Plaintiffs particularly pled factual allegations that Defendant Moskowitz

14    intentionally misled Plaintiffs. First, in his negotiation of terms of an agreement concerning

15    Plaintiffs' tenancy, Mr. Moskowitz represented that Plaintiffs would be paid $1,000 when the

16    house was sold, that Plaintiffs would be allowed to continue to live in the house rent-free for two

17    months, that Plaintiffs' security deposit would be returned to them, and that all their personal

18    property would be returned to them by 4:00 p.m. on June 14, 2015. (Compl. ¶ 54). Mr.

19    Moskowitz additionally represented to Plaintiffs that they would have a temporary hotel room

20    prepaid for a week. (Compl. ¶ 42). Second, the representations made in the negotiations were

21    false—Defendants have not paid Plaintiffs any money; Plaintiffs were not allowed to continue to

22    live at the Property; Defendants did not return Plaintiffs' security deposit; Defendants did not

23    return Plaintiffs' personal property; and Defendants paid for a hotel for two nights rather than

24    seven. (Compl. ¶ 58 and 45). Third, Mr. Moskowitz knowingly and maliciously made these

25    representations to Plaintiffs without any expectation that any of the promises that he negotiated

26    would be kept and knowing they had only paid for two hotel nights. (Compl. ¶ 156). Fourth, Mr.

27    Moskowitz intended for Plaintiffs to rely on the representations with regard to the tenancy

28    negotiations based on what appeared to be good faith bargaining with their attorney; and he

      intended for Plaintiffs to rely on the representation that their hotel would be paid for seven days

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

to convince them to leave the premises. Fifth, Plaintiffs reasonably relied on the representations with regard to the tenancy negotiations by returning to the property because the promises were the outcome of what appeared to be a good faith negotiation between their attorney and Defendants. (Compl. ¶¶ 52-55, 58-60, 158). Plaintiffs reasonably relied on the representation that Mr. Fung's hotel room would be paid for seven days. (Compl. ¶¶ 41-44). Sixth, the harm suffered by Plaintiffs as a result of Mr. Moskowitz's representations with regard to the tenancy negotiations is their continued homelessness, mental anguish, and emotional distress. (Compl. ¶¶ 64, 159). The harm suffered by Mr. Fung as a result of Mr. Moskowitz's representation about a seven-night hotel stay was his removal from the hotel along with mental anguish and emotional distress. *Id.* Seventh, Plaintiffs' reliance on Mr. Moskowitz's promises was a substantial factor in their return to the property instead of pursuing other housing options, which led to their current homelessness. (Compl. ¶¶ 52-55, 58-60, 64, 159). Plaintiffs have pled with particularity each of the elements of intentional misrepresentation pursuant to California law and their claim should not be dismissed.

## I.  PLAINTIFFS HAVE STATED CLAIMS FOR RELIEF FOR NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### 1.  Plaintiffs Have Stated a Claim for Negligence

Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (*quoting McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *L.A. Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 830 (2015). "As a general rule, each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances." *Doe v. Sup. Ct.*, 237 Cal. App. 4th 239, 244-45 (2015). "In addition to the duty

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1

2   to act reasonably in one's own conduct, one may have a duty to control the conduct of a third

3   party when the defendant stands in some special relationship to either the person whose conduct

4   needs to be controlled or in a relationship to the foreseeable victim of that conduct." *Id.* at 245.

5   An employer is vicariously liable for the torts of employees committed within the scope of their

6   employment. *See, e.g., Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133, 138-39

7   (1981). "This includes willful and malicious torts as well as negligence." *John R. v. Oakland

8   Unified School Dist.*, 48 Cal.3d 438, 447 (1989) (*quoting Martinez v. Hagopian*, 182 Cal.App.3d

9   1223, 1227 (1986)); *see also, Perez v. Van Groningen & Sons*, 41 Cal.3d 962, 969 (1986)

10  (employer liable for employee's negligence even when employee violated express company rule).

11      Here, while Mr. Moskowitz and Intero claim that because they were not involved in the

12  execution of the lease they therefore owe no duties to Plaintiffs.  However, this assertion is

13  inconsistent with the facts as pled.  As discussed above, Plaintiffs pled that each Defendant was

14  acting within the scope of an agency relationship in doing the things therein alleged; or the

15  alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by

16  each other. *See,* IV.A and IV.E, *supra*.  Whether Mr. Moskowitz and Intero were involved in

17  Plaintiffs' tenancy at its inception is irrelevant to their liability for their later negligent acts and

18  omissions.

19      Plaintiffs stated a claim for negligence against Defendants by alleging that the following

20  duties were owed: a duty to operate the rental premises in a manner that was free from unlawful

21  discrimination; a duty not to steal or otherwise convert Plaintiffs' personal property; a duty not to

22  interfere with the contractual rights of the Plaintiffs; a duty not to make fraudulent and false

23  promises; and a duty to hire, train, supervise, and discipline their employees and each other to

24  fulfill those duties. (Compl. ¶ 171). Mr. Moskowitz breached his duties by discriminating against

25  Plaintiffs based on their disability, converting their personal property, unlawfully evicting and

26  locking out Plaintiffs from the property, breaching and inciting Ms. Ray to breach the lease with

27  Plaintiffs, and making fraudulent promises to Plaintiffs. (Compl. ¶ 171). Plaintiffs additionally

28  pled that Defendant Intero breached its duties by negligently failing to train its employees

regarding the requirements of federal and state fair housing laws, negligently failing to hire

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

persons who were familiar with the requirements of federal and state fair housing laws, negligently failing to supervise employees and agents regarding compliance with state and federal law, and negligently failing to discipline or terminate employees who do not comply with the federal and state laws. (Compl. ¶ 172). Plaintiffs suffered injuries as a legal result of Defendants' negligent conduct. (Compl. ¶¶ 64, 173). Lastly, Plaintiffs were damaged by the negligent conduct of Defendants. (Compl. ¶ 64). Plaintiffs have stated a claim against Defendants for negligence and their claim should not be dismissed.

### 2.   Plaintiffs Have Stated a Claim For Negligent Infliction of Emotional Distress.

Under California law, a claim for negligent infliction of emotional distress encompasses the tort of negligence, whether the duty owed is imposed by law, is assumed by the defendant, or exists by virtue of a special relationship between the parties. *Burgess v. Superior Court*, 2 Cal.4th 1064, 1073 (1992); *see also, Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993) (negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply).

As discussed above, Plaintiffs have pled a cause of action for negligence. To claim injury for emotional distress, where a defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object California only requires that the emotional distress arises out of the defendant's breach a legal duty and the emotional distress is proximately caused by that breach of duty; and that the breach of the duty threaten some physical injury, not simply damage to property or financial interests. *See Cooper v. Superior Court*, 153 Cal.App.3d 1008, 1012-1013 (1984); *Quezada v. Hart*, 67 Cal.App.3d 754, 761-763 (1977). Here, Plaintiffs pled sufficient facts to state a claim for negligent infliction of emotional distress. As discussed in detail above, Defendants Moskowitz and Intero assumed a duty to Plaintiffs when Mr. Moskowitz acted as Ms. Ray's agent in negotiating with tenants and evicting them. This duty involved the emotional conditions of the Plaintiffs because Mr. Moskowitz knew or at least believed them to have mental health disabilities, telling Plaintiffs' counsel that Mr. Fung was "crazy," that the owner had to get him out because no one would buy the home with "someone like Johnny living there," and that it was "obvious [Mr. Fung] has some issues." (Compl. ¶ 49).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As a result of this particular relationship where Mr. Moskowitz affirmatively inserted himself as agent-landlord, while recognizing the mental health sensitivities of Plaintiffs, Mr. Moskowitz (and Intero as his employer) assumed a duty to Plaintiffs in which their emotional condition was an object. That duty included a duty not to discriminate or unlawfully evict the formerly homeless tenants when they knew or had reason to believe Plaintiffs' sensitivities to losing their housing. More clearly and alternatively, as discussed above, Plaintiffs pled sufficient facts that Defendants had a legal duty as landlords not to discriminate and not to unlawfully evict. Defendants Moskowitz and Intero owed Plaintiffs a number of duties that have been imposed by law including a duty to operate the rental premises in a manner that was free from unlawful discrimination, a duty not to steal or otherwise convert Plaintiffs' personal property, a duty not to interfere with the contractual rights of the Plaintiffs, a duty not to make fraudulent and false promises, and a duty to hire, train, supervise, and discipline their employees and each other to fulfill those duties. Mr. Moskowitz proceeded to evict Plaintiffs despite his knowledge or belief of their mental health disabilities and despite his duty not to discriminate or unlawfully evict as agent of the owner, Ms. Ray.

Plaintiffs have also pled severe emotional distress. In order to recover damages for negligent infliction of emotional distress where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was "serious." *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 927–930 (1980). Defendants' maltreatment and wrongful eviction caused Plaintiffs *serious* emotional distress by depriving them of their housing and forcing them to return to sleeping on the streets, a condition under which a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances. Plaintiffs pled that they have suffered mental anguish and emotional distress, as well as the attendant physical injuries and conditions as a result. Plaintiffs further pled that they have endured constant depression about their housing situation and their pre-existing mental health issues have been exacerbated and made worse. (Compl. ¶ 64). Therefore, because Plaintiffs pled that Defendants owed particular duties because of their legal duties as landlords

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

and because the breach of those duties resulted in serious emotional distress, Plaintiffs have also stated a claim for negligent infliction of emotional distress.

### J.   PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF FOR CONVERSION.

Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. To sustain a claim for conversion, a plaintiff must demonstrate (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998); *Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979). It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. *Igauye v. Howard*, 114 Cal.App.2d 122, 126 (1952); *see also Chaudhry v. City of L.A.*, 573 Fed. Appx. 628, 633 (9th Cir. 2014).

Here, Plaintiffs pled that most of their personal property was in their garage unit on the Property. (Compl. ¶ 47). This included their bed, bedding, a dinner table, lamps, a dresser, a coffee table, bookshelves and books, a grandfather clock, a desk, a mirror, a microwave, a refrigerator, phones, a radio, a DVD player, two bikes, clothing, a barbeque, AT&T internet equipment, medications, and many other personal belongings. (Compl. ¶ 47). Second, Plaintiffs pled that Defendants wrongfully moved all of Mr. Fung's and Ms. Mason's property out of their garage unit, with some of their belongings placed in the side yard and most moved to an unknown location. (Compl. ¶ 48). The manual transportation of the personal items listed above out of the garage demonstrated Defendants' assumption of control over the property. Lastly, Plaintiffs remain damaged by the wrongful movement of their property, being denied access to their room and their belongings (Compl. ¶ 57), having all their belongings removed from the property and presumably destroyed (Compl. ¶ 60), and still not having their belongings returned to them (Compl. ¶ 61). Therefore, Plaintiffs pled all three elements to state a plausible claim for the conversion of their personal property, and this claim should not be dismissed.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**

**K. SHOULD THE COURT DETERMINE THAT PLAINTIFFS' FAILED TO PROPERLY ALLEGE ANY OF THE CLAIMS ABOVE, IT SHOULD GRANT THEM LEAVE TO AMEND**

Although Plaintiffs contend that they have sufficiently pled all of their claims, they request that the Court grant them leave to amend their complaint if it finds any claim to be deficient.  This request is warranted, as leave to amend is freely granted by district courts unless amendment would be futile. *Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

<strong>V.     CONCLUSION</strong>

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. Alternatively, Plaintiffs should be allowed leave to file an amended Complaint should the Court dismiss any of their causes of action.

Dated: December 28, 2015

LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT


/s/ Thomas P. Zito
Thomas P. Zito
Attorney for Plaintiffs
JOHN FUNG AND LYNETTE MASON


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, and any exhibits and attachments thereto, has been filed through the CM/ECF system, so as to result in service upon all participants registered as ECF users by transmission of a Notice of Electronic Filing (NEF), and I further certify that paper copies will be sent via U.S. mail to the following non-registered participants:

Patrice Johnson Ray
7132 Via Carmela
San Jose, CA 95139


Dated: __December 28, 2015_____          /s/ Thomas Zito_____
Thomas Zito

**PLAINTIFFS' OPPOSITION TO DEFENDANTS INTERO AND MOSKOWITZ MOTION TO DISMISS**