KYRA A. KAZANTZIS (STATE BAR NO. 154612)
kyrak@lawfoundation.org
ANNETTE D. KIRKHAM (STATE BAR NO. 217958)
annettek@lawfoundation.org
MELISSA A. MORRIS (STATE BAR NO. 233393)
melissam@lawfoundation.org
THOMAS P. ZITO (STATE BAR NO. 304629)
tom.zito@lawfoundation.org
MATTHEW WARREN (STATE BAR NO. 305422)
matthew.warren@lawfoundation.org
LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT
152 North Third Street, 3rd Floor
San Jose, CA 95112
Telephone: (408) 280-2410
Facsimile: (408) 293-0106
Attorneys for Plaintiffs JOHN FUNG AND LYNETTE MASON

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## (SAN JOSE DIVISION)

|  |  |
|---|---|
| JOHN FUNG, and LYNETTE MASON<br><br>Plaintiffs,<br><br>v.<br><br>PATRICE JOHNSON RAY a/k/a PATRICE JOHNSON, DANIEL MOSKOWITZ, INTERO REAL ESTATE SERVICES, INC., and DOES 1-10.<br><br>Defendants. | **Case No. 5:15-cv-04871-BLF**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**and**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      When the Plaintiffs, Mr. Fung and Ms. Mason, who were chronically homeless prior to March 2015, found a home at 7132 Via Carmela in San Jose, California, they thought their dreams of a stable home were realized. Instead, they were defrauded, wrongfully evicted, discriminated against and deprived of money and property in a conspiracy between the landlord, Patrice Ray, a former real estate salesperson; Daniel Moskowitz, a licensed real estate

salesperson; and Intero Real Estate Services, Inc.  Mr. Fung and Ms. Mason were recipients of "Housing 1000" vouchers awarded to help them get off the street and into a stable home, but those dreams have been shattered after they were abused by the Defendants and have been once again made homeless. They bring this action against all Defendants for their discriminatory, fraudulent, and malicious acts, and seek relief and damages for Defendants' unlawful conduct.

## JURISDICTION AND VENUE

2.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Northern District of California.

## INTRADISTRICT ASSIGNMENT

4.     Intradistrict assignment in San Jose is proper since the unlawful conduct that gives rise to these claims occurred in Santa Clara County.

## PARTIES

5.     Plaintiff JOHN FUNG is an adult person who was formerly a resident of 7132 Via Carmela in San Jose, California. Mr. Fung has depression and bipolar disorder, mental health conditions. He also suffers from radiculopathy, chronic pain, and traumatic head injury. He receives Supplemental Security Income benefits because of his serious physical and mental health disabilities. At all relevant times alleged herein, Mr. Fung was over the age of 18 and a resident of Santa Clara County.

6.     Plaintiff LYNETTE MASON is an adult person who was formerly a resident of 7132 Via Carmela in San Jose, California. Ms. Mason has bipolar disorder, mental health

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

condition. At all relevant times alleged herein, Ms. Mason was over the age of 18 and a resident of Santa Clara County.

7.     Defendant PATRICE JOHNSON RAY is an adult person who at all times relevant to this complaint, owned 7132 Via Carmela in San Jose, California. At all relevant times alleged herein, PATRICE JOHNSON RAY was over the age of 18 and a resident of Santa Clara County. Ms. Ray, a former licensed real estate salesperson, had her sales license revoked by the California Department of Real Estate.

8.     Defendant DANIEL MOSKOWITZ is an adult person whose business address is 1567 Meridian Avenue, San Jose, California. As far as Plaintiffs are aware, he is a real estate salesperson licensed by the California Department of Real Estate, license #1316771, and employee of Defendant INTERO REAL ESTATE SERVICES, INC.

9.     As far as Plaintiffs are aware, Defendant INTERO REAL ESTATE SERVICES, INC., is a real estate brokerage firm licensed by the California Department of Real Estate, license #1354442, doing business in San Jose and Santa Clara County as Intero Real Estate Services. It employs Defendant MOSKOWITZ as a real estate salesperson in its San Jose office on Meridian Avenue. INTERO REAL ESTATE, INC. is a for-profit corporation organized under the laws of the State of California with its principal place of business located at 10275 N. De Anza Blvd., Cupertino, California. INTERO REAL ESTATE, INC. operates under the broker license of Douglas Tobin, who is a real estate broker licensed by the California Department of Real Estate, license #478571 and is the designated officer for Defendant INTERO REAL ESTATE, INC.

10.    For each cause of action alleged herein, Defendant INTERO is liable for the unlawful conduct of its employee, Defendant MOSKOWITZ, who was selling real estate under its real estate brokerage license.

11.    Plaintiffs do not know the true names and capacities of the fictitiously named Defendants sued herein as DOES 1 through 10, inclusive, and on that basis sue them by their fictitious names.  When Plaintiffs ascertain the true names and capacities of the DOE Defendants, Plaintiffs will amend this complaint accordingly, after obtaining leave of Court if necessary. Plaintiffs are informed and believe that each fictitiously named Defendant is

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

responsible in some manner for the acts and conduct alleged herein and that such Defendants proximately caused Plaintiffs' damages as herein alleged.

12. At all times relevant herein, Defendants were engaged in the business of renting and selling dwellings and/or housing accommodations, or interests therein to members of the public.

13. At all times relevant herein, Defendants were the agents, servants, and employees of each other; each Defendant was acting within the scope of such agency or employment in doing the things herein alleged; or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each other.

## FACTS

14. At all times relevant to this complaint, Defendant Ray was the sole owner of 7132 Via Carmela, San Jose, California ("the Property"). The Property is a single-family house with an attached garage.

15. On February 18, 2015, a Notice of Default was recorded with the Santa Clara County Recorder against the Property in the amount of $19,933. Upon information and belief, the default was due to Ms. Ray's failure to make timely mortgage payments, and, as far as Plaintiffs are aware, Ms. Ray was aware of the default and that the house would be subject to foreclosure proceedings if the default was not cured.

16. On or about March 6, 2015, Mr. Fung and Ms. Mason moved into the garage at the Property.

17. Prior to moving into the Property, Mr. Fung and Ms. Mason were homeless. They have been chronically homeless since 2011.

18. At the time they moved in in March 2015, neither Mr. Fung nor Ms. Mason were informed of the likely foreclosure of the Property.

19. Mr. Fung is a recipient of Section 8 Housing Choice Voucher through Santa Clara County's Housing 1000 Program. Section 8 is a housing subsidy program in which a tenant rents in the private housing market. The tenant pays a portion of the rent based upon his or her income, and the local housing authority subsidizes the remainder of the rent. Ms. Ray was aware that

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**      **Case No. 5:15-CV-04871-BLF**

1  Plaintiffs had a Housing Choice Voucher and that the Housing Authority of Santa Clara County

2  ("Housing Authority") would be paying a portion of their rent directly to her pursuant to the

3  voucher program.

4      20.    Upon moving in, Ms. Ray told Mr. Fung and Ms. Mason that the Housing

5  Authority would not approve the unit until it was repaired and made habitable, but that she

6  would let them move in for free in exchange for their making the repairs themselves. Mr. Fung

7  and Ms. Mason moved in and made a number of needed repairs at their own expense. The repairs

8  included moving items stored in the garage out of the garage; repairing the furnace to provide

9  heat in the garage; repairing electrical outlets, a ceiling fan, the clothes dryer, the garbage

10  disposal, and some doors; cleaning the carpet; installing carbon monoxide detectors; patching the

11  walls; fixing water leaks in the bathroom; and repairing the carpet.

12      21.    Despite Ms. Ray's promise that Mr. Fung and Ms. Mason could stay for free in

13  March in exchange for making the necessary repairs, Ms. Ray accepted $400 in rent from Mr.

14  Fung and Ms. Mason for leasing the garage for March and April.

15      22.    On numerous occasions between March 5, 2015 and April 16, 2015, Ms. Ray and

16  her guests entered Plaintiffs' garage unit without notice or permission from Mr. Fung or Ms.

17  Mason. While in their unit, Ms. Ray rifled through the Plaintiffs' belongings and used a tanning

18  bed that she had left in their unit, without their permission to do so.

19      23.    On or about March 23, 2015, Mr. Fung, with the permission of Ms. Ray and the

20  assistance of another person, moved Ms. Ray's tanning bed out of the garage and reconstructed it

21  in the back yard of the house.

22      24.    On or about April 10, 2015, Ms. Ray and her guest kicked the door to Plaintiffs

23  room off its hinges and damaged the frame. Mr. Fung returned home to find Ms. Ray and her

24  guest in his and Ms. Mason's room.

25      25.    On April 16, 2015, with the assistance of Elizabeth Kerrigan, who was Mr.

26  Fung's and Ms. Mason's caseworker at Catholic Charities of Santa Clara County, Plaintiffs and

27  Ms. Ray signed a one-year written lease for the term of April 15, 2015, to April 15, 2016. Under

28  the terms of the lease, Mr. Fung and Ms. Mason rented the entire Property from Ms. Ray and

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

1
2
3

were required to pay for all utilities at the Property. The monthly contract rent was $723 per month. The lease also required them to pay a $2,100 security deposit to Ms. Ray of which the Plaintiffs had already paid $200.

4
5
6

26.     Under Mr. Fung's housing voucher, the Plaintiffs' rental payments at the Property would have been approximately $190 per month. The Housing Authority would have been responsible for paying the remaining monthly rent ($533) directly to the landlord.

7
8
9
10
11
12
13

27.     As required by the Section 8 Program, soon after Mr. Fung and Ms. Mason signed the lease with Ms. Ray, the Housing Authority sent Ms. Ray a Housing Assistance Payment (HAP) contract and the HUD Tenancy addendum for Ms. Ray to execute and return to the Housing Authority. Ms. Ray did not return the documents in a timely manner. On or about May 28, 2015, the Housing Authority once again sent Ms. Ray the documents and requested that she return executed originals along with a copy of Mr. Fung's and Ms. Mason's lease. As far as Plaintiffs are aware, Ms. Ray never responded to the Housing Authority.

14
15

28.     Despite signing a lease with Mr. Fung and Ms. Mason for possession of the entire Property, Ms. Ray only permitted Plaintiffs to occupy the garage unit.

16
17

29.     Upon information and belief, Ms. Ray never received a permit to convert the garage unit into habitable space.

18
19
20
21

30.     Also, at the time of signing the lease, Ms. Kerrigan instructed Ms. Ray about the law concerning landlord entry of the tenants' private space.  At that time, Ms. Ray was instructed to provide Ms. Mason and Mr. Fung with 24-hour written notice before she entered their room for a reason permitted by law.

22
23
24
25
26
27
28

31.      Later that day, Ms. Ray, locked the door from the garage to the rest of the house with a deadbolt, thereby preventing Mr. Fung and Ms. Mason from accessing the remainder of the house. Ms. Ray informed Mr. Fung and Ms. Mason that, because they refused to allow Ms. Ray unrestricted access to their unit, they could not use any of the rest of the Property. Despite the clear language of the lease allowing them possession of the entire premises, Ms. Ray locked Plaintiffs out of the rest of the Property. By locking Plaintiffs out of the rest of the Property, including the kitchen, laundry room and all other areas of the house, Ms. Ray deprived Plaintiffs

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

of cooking facilities and on-site laundry. Subsequently, Plaintiffs used their camping stove, small microwave, and a barbeque to cook either in the garage or outdoors, in order to prepare food. They were not allowed to retrieve any of their food, cookware or other possessions that had been kept in the house. As of the date of filing this complaint, they still have not been able to retrieve those items.

32.     On or about April 17, 2015, Ms. Ray interfered with a delivery of furniture for Plaintiffs. She told the delivery persons, "Do not bring any of that stuff onto this property, I am the owner and I say no." She screamed at Plaintiffs and the delivery persons about the furniture delivery.

33.     Despite signing a lease to rent the Plaintiffs the entire Property, while Plaintiffs lived at the Property, Ms. Ray also lived at the Property, in the house, and rented out rooms to at least three, and often more, additional tenants.

34.     While Mr. Fung and Ms. Mason were living at the Property, Ms. Ray told other tenants living at the Property that Mr. Fung and Ms. Mason were "crazy" and "psychotic."

35.     On or before April 18, 2015, Ms. Ray engaged the services of Defendants MOSKOWITZ and INTERO REAL ESTATE SERVICES, INC. ("Intero"). On or about April 22, 2015, Mr. Moskowitz listed the Property for sale on INTERO's website and on the realtor Multiple Listing Service ("MLS").

36. Defendants MOSKOWITZ and INTERO were aware that Mr. Fung and Ms. Mason had executed a one year lease agreement with Defendant RAY and that they were living at the Property.

37.     On or about April 20, 2015, the Housing Trust of Silicon Valley sent to Ms. Ray a check in the amount of $2189 to cover Plaintiffs' first month's rent (May) and security deposit. Ms. Ray cashed the check on or about April 29, 2015.

38.     At some time in May 2015, Ms. Ray told Mr. Fung and Ms. Mason that the house was in foreclosure.

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

39.     On or about May 4, 2015, the electricity service was shut off at the Property. Upon information and belief, Ms. Ray failed to pay for the electricity service in order to force all tenants to move out of the house.

40.     Despite receiving payment in full for May's rent from the Housing Trust of Silicon Valley, on several occasions in late May, Ms. Ray demanded rent from Plaintiffs. Ms. Ray claimed that she had not received any deposit or check from the Housing Trust or the Housing Authority. After Ms. Ray's third demand for rent, Plaintiffs contacted their case worker at Catholic Charities who confirmed with the Housing Trust that the check sent in April had been cashed by Ms. Ray.

41.     On or about June 1, 2015, Plaintiffs paid Ms. Ray $190 in rent, which was the amount of rent they were required to pay under their Housing Choice Voucher.

42.     On or about June 5, 2015, Mr. Moskowitz told Mr. Fung that, because Mr. Moskowitz intended to show the Property to potential buyers, Mr. Fung had to clean up the garage and move all of his clothing, tools, laptop, and other belongings into the closet. He also told Mr. Fung that Mr. Fung was not allowed to be at the Property while Mr. Moskowitz was showing the Property.

43.     On or about June 5, 2015, Ms. Ray and Mr. Moskowitz again told Mr. Fung that Ms. Ray would be selling the home, and that Mr. Fung could not remain at the Property while it was being shown to potential buyers. Mr. Moskowitz told Mr. Fung that he had to go to a hotel and stay there while the Property was shown. Ms. Ray demanded that Mr. Fung immediately follow her to the Residence Inn at 6111 San Ignacio Avenue in San Jose, which he did. Ms. Ray informed Mr. Fung that Defendants had prepaid for a hotel room for him for seven days. Upon information and belief, Mr. Moskowitz provided the money to pay for the hotel. Ms. Mason was visiting a relative out of town at the time.

44.     Upon information and belief, Mr. Moskowitz advised Ms. Ray to evict Mr. Fung and Ms. Mason in order to sell the Property in a more expeditious manner.

45.     As a result of Mr. Moskowitz and Ms. Ray's directive, Mr. Fung moved into the Residence Inn for two days. While Mr. Fung was staying at the hotel, Mr. Moskowitz called

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Elizabeth Kerrigan. Mr. Moskowitz demanded to know what Ms. Kerrigan was planning to do with Plaintiffs and asked where they were going to live in the future. He informed her that Plaintiffs could not live at the Property.

46.    On or about June 7, 2015, after only two nights, the hotel manager told Mr. Fung that he had to leave the hotel because his room had only been paid for two nights and was no longer being paid for.

47.    After Mr. Fung was forced out of the hotel, Mr. Fung called Ms. Ray to tell her that the hotel had not been paid for and that he would be returning to the Property. Ms. Ray refused to speak to him, but through her boyfriend, informed Mr. Fung that, at that time (June 7, 2015), he could not return to the Property.

48.    Much of Mr. Fung's and Ms. Mason's personal property was in their garage unit on the Property. This included their bed, bedding, a dinner table, lamps, a dresser, a coffee table, bookshelves and books, a grandfather clock, a desk, a mirror, a microwave, a refrigerator, phones, a radio, a DVD player, two bikes, clothing, a barbeque, AT&T internet equipment, medications, and many other personal belongings.

49.    When Mr. Fung returned to the Property, he could not enter his garage unit. Ms. Ray had changed the numerical access code to his unit, thereby locking him out, and had moved all of his and Ms. Mason's belongings out of the garage. Some of their belongings had been placed in the side yard, but most were moved to an unknown location.

50.    When Kara Brodfuehrer, Mr. Fung's lawyer with the Law Foundation of Silicon Valley, contacted Mr. Moskowitz on Plaintiffs' behalf, Mr. Moskowitz told Ms. Brodfuehrer that Mr. Fung was "crazy" and that the owner had to get him out because no one would buy the home with "someone like Johnny living there." Mr. Moskowitz informed Ms. Brodfuehrer that she would have to deal with him, not Ms. Ray, with respect to Plaintiffs' tenancy. Mr. Moskowitz also asked Ms. Brodfuehrer whether he would have to disclose to potential buyers that a "crazy person was living there." In several other conversations with Ms. Brodfuehrer, Mr. Moskowitz repeated that he was the person she should be "dealing with" concerning Plaintiffs' tenancy.  He

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

also continued to refer to Mr. Fung as "crazy," and stated that it was "obvious he has some issues."

51.     Mr. Fung arranged to meet Ms. Ray at the house on June 10, 2015, in order to get his and Ms. Mason's possessions back. Ms. Ray did not show up for the scheduled appointment, and Mr. Fung was unable to retrieve his belongings.

52.     Mr. Fung again arranged to meet Ms. Ray on June 11, 2015, to retrieve his belongings. Ms. Ray told him he had to wait. After waiting several hours, Ms. Ray left and informed Mr. Fung that she was "going out for Chinese food," and told him she would be back in a few hours and that he could retrieve his belongings at that time. Ms. Ray never returned, and Mr. Fung was unable to retrieve his belongings including his medicine and his and Ms. Mason's cell phones.

53.     On June 12, 2015, Mr. Fung and Ms. Mason came to an oral agreement with Mr. Moskowitz and Ms. Ray concerning their tenancy. The agreement was negotiated by phone by the Plaintiffs' lawyer Ms. Brodfuehrer with both Mr. Moskowitz and Ms. Ray.

54.     During that call, Mr. Moskowitz told Ms. Brodfuehrer that she had to "deal with him" and that he was the person who was negotiating the terms of any agreement concerning Mr. Fung's and Ms. Mason's tenancy. After initially speaking on the phone with Mr. Moskowitz, Ms. Brodfuehrer requested that Ms. Ray join the call. Ms. Ray was joined to the call by conference, but Mr. Moskowitz continued to do most of the talking and negotiate the terms of the agreement between the parties, acting at all times as agent for Ms. Ray with respect to Plaintiffs' tenancy.

55.     Under the terms of that agreement, Ms. Ray and Mr. Moskowitz promised to pay $1,000 to Mr. Fung and Ms. Mason when the house was sold, agreed that they would allow Plaintiffs to continue to live in the house rent-free for two months, agreed that they would return the Plaintiffs' security deposit, and agreed to return to them all of their personal property by 4:00 p.m. on June 14, 2015. Defendants did not abide by the terms of this agreement.

56.     Mr. Fung and Ms. Mason were allowed back onto the Property and into their garage unit later that day (June 12, 2015). Some, but not all, of their possessions were packed

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and stacked on the side of the house. They began putting their belongings back into the garage unit and spent time cleaning their room. They spent the night in their garage unit at the Property.

57.     On June 13, 2015, Ms. Ray saw Mr. Fung on the Property. She yelled at Mr. Fung and Ms. Mason, and forced them to leave the Property. Ms. Ray repeatedly lunged at Plaintiffs and screamed "fucking cunt" at Ms. Mason while being restrained by her boyfriend. Ms. Ray's boyfriend told Plaintiffs that the Property was "not your house." Mr. Fung and Ms. Mason, feeling that they were in danger of physical harm, left the Property.

58.     Plaintiffs returned to the Property on June 14, 2015, but were unable to get into the Property or their room. They were again informed by Ms. Ray, through her boyfriend, that they "did not live there" and that none of their belongings were in the garage. Ms. Ray informed Mr. Fung and Ms. Mason that she was denying them access to their room and their belongings, and that they were not allowed to come onto "her" property.

59.     Mr. Moskowitz and Ms. Ray did not return Mr. Fung and Ms. Mason's belongings by June 14, 2015, as they had promised. They did not allow Plaintiffs to continue to live at the Property as promised, they have not paid them any money as promised, and they have not returned their security deposit as promised.

60.     On June 15, 2015, Ms. Brodfuehrer again spoke to Mr. Moskowitz concerning Mr. Fung's and Ms. Mason's possessions which had not been returned. He refused to provide information about their personal property or make that property available as promised.

61.     Later that day, Mr. Fung and Ms. Mason were let into the Property by a Santa Clara County Sheriff Deputy in a "civil standby" to attempt to recover their possessions. Ms. Brodfuehrer informed Mr. Moskowitz of the civil standby, and he told her that he would be at the Property when the sheriff deputies arrived. When Mr. Fung and Ms. Mason arrived at the Property with the sheriff deputies, they discovered that none of their possessions were on the premises. Mr. Moskowitz was not at the Property. A guest at Ms. Ray's house told Mr. Fung and Ms. Mason that Ms. Ray had asked him to move all of their belongings to an undisclosed storage facility. The guest could not provide the name of the facility or the number of the storage unit.

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

62.     As of the date of filing this First Amended Complaint, Defendants have not returned Plaintiffs' belongings, nor have they paid any money to Plaintiffs.

63.     Mr. Fung and Ms. Mason have been homeless since Ms. Ray illegally removed them from the Property for the second time on June 13, 2015. Plaintiffs are actively looking for another place to live but have been unsuccessful.

64.     Under Housing Authority rules, Section 8 voucher holders risk losing their vouchers if they are unable to use them to lease housing for an extended period of time. By not properly completing the Housing Authority paperwork, and by forcing Plaintiffs into homelessness, Defendants have put Plaintiffs at risk of losing an important and valuable housing subsidy.

65.     The Property was sold in November 2015.  Defendant MOSKOWITZ earned a commission of $19,486.25.  After all payments for liens, fees, etcetera, Defendant RAY earned $79,934 from the sale.  Defendant INTERO earned $3,438.75 in commission from the sale of the Property.

## INJURIES

66.     Because of Defendants' unlawful acts and practices, Plaintiffs have been made homeless and are sleeping on the streets and relying on the charity of others; they have been deprived of nearly all of their personal property; they have been subjected to abuse, resulting in physical and mental injury; they have been deprived of the benefit of their bargain for long term housing; and they are in danger of losing their Housing Choice Vouchers due to their current homelessness. Because of Defendants' unlawful acts and practices, Plaintiffs have suffered mental anguish and emotional distress, and the attendant physical injuries and conditions. Plaintiffs have endured constant depression about their housing situation and their pre-existing mental health issues have been exacerbated and made worse.

67.     Defendants, acting individually and in concert, directly and through agents, have discriminated against persons with mental health disabilities and those associated with those

persons in the operation and rental of housing at the Property. Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

68.     Defendants' pattern or practice of discrimination against people on account of their disability status includes, but is not limited to: denying or making unavailable housing to tenants with mental health disabilities through restricting, evicting, locking out, limiting, or steering away such individuals from otherwise available rental housing.

69.     Defendants' conduct was knowing and willful or with reckless disregard for the consequences of their acts. Accordingly, Plaintiffs are entitled to compensatory damages.

70.     Defendants' acted intentionally, maliciously, wantonly, recklessly, and in bad faith as described herein. Accordingly, Plaintiffs are entitled to punitive damages.

71.     There now exists an actual controversy between the parties regarding Defendants' duties under the federal and state fair housing laws. Accordingly, Plaintiffs are entitled to declaratory relief.

72.     Unless enjoined, Defendants will continue to engage in the unlawful acts and discrimination described above. Plaintiffs have no adequate remedy at law to halt the continuing unlawful conduct. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts and their discrimination against disabled persons unless relief is provided by this Court. Accordingly, Plaintiffs are entitled to injunctive relief.

## CLAIMS

### FIRST CLAIM
Violation of the Fair Housing Act (42 U.S.C. §§ 3601-3617)
[All Plaintiffs vs. All Defendants]

73.     Plaintiffs reallege and incorporate by reference each and every allegation contained in all paragraphs above as if fully set forth herein.

74.     Plaintiffs Fung and Mason each possess a "handicap" [1] within the meaning of 42 U.S.C. § 3602(h) and are each a "Person" within the meaning of 42 U.S.C. § 3602(d).

---

[1] The FHAA uses the term "handicap" instead of "disability," although it is well-established that these terms are comparable. For example, the Senate Report for the Americans with Disabilities Act of 1989 ("ADA") notes that the ADA's definition of "disability" is comparable to the

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

75.     The subject property at 7132 Via Carmela in San Jose is a "Dwelling" within the meaning of 42 U.S.C. § 3602(b).

76.     Defendants RAY, MOSKOWITZ, and INTERO are each considered a "Person" within the meaning of 42 U.S.C. § 3602(d).

77.     Defendant MOSKOWITZ  injured Plaintiffs in violation of the Fair Housing Amendments Act by actions outlined in detail above, which include, but are not limited to: making housing unavailable to Plaintiffs, requiring Plaintiffs to leave the premises for a week and reside in a hotel, refusing to allow Plaintiffs to live in the premises for the duration of their lease, advising or assisting Defendant RAY with breaching her lease with Plaintiffs and removing them from the premises prior to any sale, converting or otherwise refusing to provide access to their personal belongings, advising or assisting Defendant RAY in violating her obligations under landlord-tenant law, and  making discriminatory statements to Plaintiffs and third parties concerning their disabilities and ability to reside at the property because of their disabilities. All of Defendant MOSKOWITZ's acts were taken in whole or part because of Plaintiffs' disabilities or perceived disabilities, or because Plaintiffs tried to assert their rights.

Defendant MOSKOWITZ's acts violated the Fair Housing Amendments Act by:

A.      Discriminating, or otherwise making unavailable or denying a dwelling to the Plaintiffs because of Mr. Fung's disability in violation of 42 U.S.C. § 3604(f)(1);

B.      Discriminating in the terms, conditions and privileges of the rental of a dwelling and provision of services or facilities in connection with a rental dwelling because of Mr. Fung's disability in violation of 42 U.S.C. § 3604(f)(2);

C.      Making statements that were discriminatory to persons with mental health disabilities, indicated a limited access to the subject property by persons with

definition of the term 'individual with handicaps' in section 7(8)(B) of the Rehabilitation Act of 1973 and section 802(h) of the Fair Housing Act." Sen. Rep. No. 101-116, at 20 (1989). This complaint uses "disability," which is the more widely accepted term unless directly quoting a section of the statute. For purposes of this complaint, "disability" and "handicap" or their derivatives are interchangeable.

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          Case No. 5:15-CV-04871-BLF

mental health disabilities, and indicating a preference for non-disabled tenants in violation of 42 U.S.C. § 3604(c); and

D.      Interfering with and/or intimidating Plaintiffs on account of their exercise or enjoyment of their rights as guaranteed by the Fair Housing Amendments Act on account of their disability in violation of 42 U.S.C. §3617.

78.      Defendant RAY injured Plaintiffs in violation of the Fair Housing Amendments Act by her actions outlined in detail above which were taken by her, which include, but are not limited to: making their housing unavailable, requiring Plaintiffs to leave the premises for a week and reside in a hotel, unlawfully evicting Plaintiffs from the Property, preventing Plaintiffs from accessing the common areas of the property, removing Plaintiffs from the premises prior to any sale, unlawfully depriving them of the use and enjoyment of the premises, converting or otherwise refusing to provide access to their personal belongings, violating her obligations under landlord-tenant law, and by making discriminatory statements to Plaintiffs and third parties concerning their disabilities. All of Defendant RAY's acts were taken in whole or part because of Plaintiffs' disabilities or perceived disabilities, or because Plaintiffs tried to assert their rights. Defendant RAY's acts violated the Fair Housing Amendments Act by:

A.      Discriminating, or otherwise making unavailable or denying a dwelling to the Plaintiffs because of Mr. Fung's disability in violation of 42 U.S.C. § 3604(f)(1);

B.      Discriminating in the terms, conditions and privileges of the rental of a dwelling and provision of services or facilities in connection with a rental dwelling because of Mr. Fung's disability in violation of 42 U.S.C. § 3604(f)(2);

C.      Making statements that were discriminatory to persons with mental health disabilities, indicated a limited access to the subject property by persons with mental health disabilities, and indicated a preference for non-disabled tenants in violation of 42 U.S.C. § 3604(c); and

D.      Interfering with and/or intimidating Plaintiffs on account of their exercise or enjoyment of their rights as guaranteed by the Fair Housing Amendments Act on account of their disability in violation of 42 U.S.C. §3617.

79.     Defendant RAY is also vicariously liable for any and all of acts of Defendant MOSKOWITZ. *Meyer v. Holley*, 123 S. Ct. 824 (2003).

80.     Defendant INTERO is vicariously liable for any and all acts of Defendant MOSKOWITZ. *Meyer v. Holley*, 123 S. Ct. 824 (2003).

81.     As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

82.     Pursuant to 42 U.S.C. § 3613, Plaintiffs are entitled to actual damages, including emotional distress damages, as well as punitive damages and injunctive relief as set forth below. Additionally, Plaintiffs are entitled to their reasonable attorney's fees and costs. Plaintiffs pray for relief and judgment as set forth below.

## SECOND CLAIM

Violation of the California Fair Employment and Housing Act
(Cal. Gov't. Code §§ 12955-12955.8)
[All Plaintiffs vs. DEFENDANT RAY]

83.     Plaintiffs reallege and incorporate by reference each and every allegation contained in all paragraphs above as if fully set forth herein.

84.     Plaintiffs Fung and Mason are each disabled within the meaning of Cal Gov't Code §§ 12955.3 and 12926.

85.     Defendant RAY is an "Owner" and "Person" within the meaning of Cal. Gov't. Code § 12927.

86.     The subject property at 7132 Via Carmela in San Jose is a "Housing Accommodation" within the meaning of Cal. Gov't. Code § 12927.

87.     Defendant RAY has injured Plaintiffs in violation of the California Fair Employment and Housing Act ("FEHA") by her actions outlined in detail above which were taken by her, which include, but are not limited to: making their housing unavailable, requiring

Plaintiffs to leave the premises for a week and reside in a hotel, unlawfully locking out and evicting the Plaintiffs from the subject property, preventing Plaintiffs from accessing the common areas of the property, removing Plaintiffs from the premises prior to any sale despite a one year lease with them, unlawfully depriving them of the use and enjoyment of the premises, converting or otherwise refusing to provide access to their personal belongings, violating her obligations under landlord-tenant law, and by making discriminatory statements to Plaintiffs and third parties concerning their disabilities. All of Defendant RAY's acts were taken in whole or part because of Plaintiffs' disabilities or perceived disabilities, or because Plaintiffs tried to assert their rights.  All of these acts constitute "Discrimination" as defined by Cal. Gov't Code § 12927(c). Defendant RAY's acts violated FEHA by:

> A.    Discriminating or otherwise making unavailable dwellings because of disability, in violation of Cal. Gov't Code §§ 12955(a), 12955(d), 12955(k);

> B.    Making statements of discrimination, limitation, or preference based on disability, in violation of Cal. Gov't Code § 12955(c);

> C.    Harassing, evicting, or otherwise discriminating against Plaintiffs in the rental of housing accommodations in retaliation for that person's opposition to practices unlawful under the California Fair Employment and Housing Act, in violation of Cal. Gov't Code § 12955(f); and

> D.    Coercing, intimidating, threatening or interfering with Plaintiffs for exercising and enjoying rights guaranteed by Cal. Gov't Code § 12955 in violation of Cal. Gov't Code §12955.7.

88.    Defendant RAY is also vicariously liable for any and all of acts of Defendant MOSKOWITZ that violate FEHA.

89.    As a proximate cause of Defendant's conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

90.    Pursuant to Cal. Gov't. Code §12989.2, Plaintiffs are entitled to actual damages, including emotional distress damages, as well as punitive damages and injunctive relief as set

forth below. Additionally, Plaintiffs are entitled to their reasonable attorney's fees and costs. Plaintiffs pray for relief and judgment as set forth below.

### THIRD CLAIM

Violation of the California Fair Employment and Housing Act
(Cal. Gov't. Code §§ 12955-12955.8)
[All Plaintiffs vs. Defendants MOSKOWITZ and INTERO]

91.    Plaintiffs reallege and incorporate by reference each and every allegation contained in all paragraphs above as if fully set forth herein.

92.    Plaintiffs Fung and Mason are each disabled within the meaning of Cal Gov't Code §§ 12955.3 and 12926.

93.    Because Defendant MOSKOWITZ is an individual real estate salesperson and Defendant INTERO is a real estate broker entity, Defendants MOSKOWITZ and INTERO are "Owners" and "Persons" within the meaning of Cal. Gov't. Code § 12927.

94.    The subject property at 7132 Via Carmela in San Jose is a "Housing Accommodation" within the meaning of Cal. Gov't. Code § 12927.

95.    Defendants MOSKOWITZ and INTERO have injured Plaintiffs in violation of the California Fair Employment and Housing Act by actions outlined in detail above, which include, but are not limited to: making their housing unavailable, requiring Plaintiffs to leave the premises for a week and reside in a hotel, refusing to allow Plaintiffs to live in the premises for the duration of their lease, advising or assisting Defendant RAY with breaching her lease with Plaintiffs and removing them from the premises prior to any sale, converting or otherwise refusing to provide access to their personal belongings, advising or assisting Defendant RAY in violating her obligations under landlord-tenant law, unlawfully depriving them of the use and enjoyment of the premises, and by making discriminatory statements to Plaintiffs and third parties concerning their disabilities. All of Defendant MOSKOWITZ acts were taken in whole or part because of Plaintiffs' disabilities or perceived disabilities, or because Plaintiffs tried to assert their rights. All of these acts constitute "Discrimination" as defined by Cal. Gov't Code § 12927(c). Defendant MOSKOWITZ's acts violated FEHA by:

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

A.      Discriminating or otherwise making unavailable dwellings because of Plaintiffs' disabilities, in violation of Cal. Gov't Code §§ 12955(a), 12955(d), 12955(k);

B.      Making statements of discrimination, limitation, or preference based on disability, in violation of Cal. Gov't Code § 12955(c);

C.      Harassing, evicting, or otherwise discriminating against Plaintiffs in the rental of housing accommodations in retaliation for their opposition to practices that are unlawful under FEHA, in violation of Cal. Gov't Code § 12955(f);

D.      Coercing, intimidating, threatening or interfering with Plaintiffs for exercising and enjoying rights guaranteed by Cal. Gov't Code § 12955 in violation of Cal. Gov't Code §12955.7;

E.      Aiding, abetting, compelling or coercing the landlord to evict or otherwise exclude the Plaintiffs from the house because of their disability in violation of Cal. Gov't Code § 12955(g); and

F.      Discriminating against the Plaintiffs in the terms and conditions of a transaction in violation of Cal. Gov't Code § 12955(i)

96.     Defendant INTERO is vicariously liable for any and all individual acts of Defendant MOSKOWITZ alleged above.

97.     Defendants MOSKOWITZ and INTERO were engaged in making "Real estate-related transactions" with respect to the subject property as meant by Cal. Gov't Code § 12927.

98.     As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

99.     Pursuant to Cal. Gov't. Code §12989.2, Plaintiffs are entitled to actual damages, including emotional distress damages, as well as punitive damages and injunctive relief as set forth below. Additionally, Plaintiffs are entitled to their reasonable attorney's fees and costs. Plaintiffs pray for relief and judgment as set forth below.

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

**FOURTH CLAIM**

Conspiracy to violate civil rights (42 U.S.C. § 1985(3))
[All Plaintiffs vs. All Defendants]

100.    Plaintiffs incorporate herein by reference the allegations contained above in all paragraphs as if fully set forth herein.

101.    As alleged in greater detail above, because Plaintiffs had mental health disabilities, Defendants conspired and agreed to a plan to deprive Plaintiffs of the protection of federal and state laws prohibiting discrimination against persons with disabilities, to deprive Plaintiffs of the protection of tenancy and contract laws, to fraudulently induce Plaintiffs to move and to deprive Plaintiffs of their property. Defendants acted with malice or with reckless indifference to Plaintiffs federally protected rights.

102.    Plaintiffs are members of the class of persons protected by 42 U.S.C. §1985(3). *See*, *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir. 1992); *Abrams v. 11 Cornwell Co.,* 695 F.2d 34 (2d Cir. 1982) *vacated in part on other grounds*, 718 F .2d 22 (2nd Cir. 1983); *Lake v. Arnold*, 112 F.3d 682 (3rd Cir. 1997); *Larson v. Miller*, 55 F.3d 1343, 1352-53 (8th Cir. 1995) *vacated on other grounds and different results reached* 76 F.3d 1446 (8th Cir. 1996 en banc).

103.    Defendants' actions were taken in whole or part because of Plaintiffs' membership in a protected class, i.e. because of their disabilities.

104.    As detailed in greater detail above, all Defendants took acts in furtherance of the conspiracy.  These acts include but are not limited to: Defendant RAY locked Plaintiffs out of the Property on two separate occasions, terminated electricity service, refused to honor her one-year lease with the Plaintiffs, and deprived Plaintiffs of their property.  Defendant MOSKOWITZ negotiated in bad faith with Plaintiffs and made a number of false promises, required Mr. Fung to leave the Property for at least one week during the term of Plaintiff's lease, and aided and abetted Defendant RAY in breaching her lease agreement and evicting Plaintiffs from the property.  Defendant INTERO ratified or authorized all of Defendant MOSKOWITZ's actions.

105.    Plaintiffs have suffered significant injury, emotional distress, lost money, property, and have been made homeless as a direct result of Defendants' conspiracy to violate their civil rights.

106.    Pursuant to 42 U.S.C. § 1988 and federal common law, Plaintiffs are entitled to actual damages and consequential damages, including emotional distress damages, as well as punitive damages as set forth below. Additionally, Plaintiffs are entitled to their reasonable attorney's fees and costs. Plaintiffs pray for relief and judgment as set forth below.

**FIFTH CLAIM**
Violation of the California Disabled Person's Act (Cal. Civ. Code §§ 54-55.2)
[All Plaintiffs vs. All Defendants]

107.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all paragraphs above.

108.    Plaintiffs Fung and Mason are each disabled within the meaning of Cal. Civ. Code § 54 and Cal Gov't Code § 12926.

109.    The subject property at 7132 Via Carmela in San Jose is a "Housing Accommodation" within the meaning of Cal. Civ. Code § 54.1.

110.    Defendants RAY and MOSKOWITZ are "persons" for purposes of Cal. Civ. Code §§ 54.1 and 54.3.

111.    Defendant INTERO is a "corporation" for purposes of Cal. Civ. Code §§ 54.1 and 54.3.

112.    Defendants have injured Plaintiffs by denying individuals with disabilities full and equal access to its housing accommodations offered for rent or lease in violation of Cal. Civ. Code § 54.1(b)(1), by:

A.   In the case of Defendants MOSKOWITZ by his actions outlined in detail above, which include, but are not limited to: making their housing unavailable, requiring Plaintiffs to leave the Property for a week and reside in a hotel, refusing to allow Plaintiffs to live in the premises for the duration of their lease before and after any sale, advising or assisting Defendant RAY

with breaching her lease with the Plaintiffs and removing them from the premises prior to any sale, unlawfully depriving them of the use and enjoyment of the premises, converting or otherwise refusing to provide access to their personal belongings, and advising or assisting Defendant RAY in violating her obligations under landlord-tenant law.  All of Defendant MOSKOWITZ actions were taken in whole or part because of Plaintiffs disabilities.

B.  In the case of Defendant RAY, by actions taken by her which outlined in greater detail above,, which include, but are not limited to: making their housing unavailable, requiring Plaintiffs to leave the premises for a week and reside in a hotel, unlawfully evicting Plaintiffs from the Property, preventing plaintiffs from accessing the common areas of the property, removing Plaintiffs from the premises prior to any sale, unlawfully depriving them of the use and enjoyment of the premises, converting or otherwise refusing to provide access to their personal belongings, and violating her obligations under landlord-tenant law.  All of Defendant RAY's actions were taken in whole or part because of Plaintiffs' disabilities.  Defendant RAY is also vicariously liable for any and all of acts of Defendant MOSKOWITZ and INTERO.

113.    Defendant INTERO is vicariously liable for any and all individual acts of Defendant MOSKOWITZ alleged above.

114.    As a proximate cause of Defendants' conduct, Plaintiffs have been damaged and continue to suffer damages, as set forth above.

115.    Pursuant to Cal. Civ. Code §§ 54.3 and 55.2, Plaintiffs are entitled to injunctive relief, statutory damages, actual damages, including emotional distress damages, and up to three times their actual damages as determined by a trier of fact, as well as their reasonable attorneys' fees.

116.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**        **Case No. 5:15-CV-04871-BLF**

1

2

**SIXTH CLAIM**
Violation of the California Unruh Act (Cal. Civ. Code § 51)
[All Plaintiffs vs. All Defendants]

3

4

117.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all paragraphs above.

5

6

7

118.     Defendant RAY operated a "business establishment" at the subject property within the meaning of the Unruh Act, Cal. Civ. Code §51 by renting the house and rooms to Plaintiffs.

8

9

10

119.     As described in greater detail above, Defendants MOSKOWITZ and INTERO were the agents of RAY and were engaged in "business" and the operation of a "business establishment" within the meaning of the Unruh Act, Cal. Civ. Code §51.

11

12

13

14

120.     In doing the things herein alleged, Defendants have violated Plaintiffs' rights to fair housing under the Unruh Civil Rights Act, Cal. Civil Code § 51. As described in greater detail above, Defendants engaged or allowed their agents to engage in conduct that was of a hostile nature based upon Mr. Fung's disability. This conduct included:

15

16

17

18

19

20

21

22

23

24

25

26

A.  In the case of Defendants MOSKOWITZ and INTERO by their actions outlined in detail above, which include, but are not limited to: making their housing unavailable, requiring Plaintiffs to leave the premises for a week and reside in a hotel, refusing to allow Plaintiffs to live in the premises for the duration of their lease before and after any sale, advising or assisting Defendant RAY with breaching her lease with Plaintiffs and removing them from the premises prior to any sale, unlawfully depriving them of the use and enjoyment of the premises, converting or otherwise refusing to provide access to their personal belongings, and advising or assisting Defendant RAY in violating her obligations under landlord-tenant law.  All of Defendant MOSKOWITZ actions were taken in whole or part because of Plaintiffs disabilities.

27

28

B.  In the case of Defendant RAY, by her actions outlined in greater detail above, which were taken by her, which include, but are not limited to: making their

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

housing unavailable, requiring Plaintiffs to leave the premises for a week and reside in a hotel, unlawfully evicting the Plaintiffs from the Property, preventing Plaintiffs from accessing the common areas of the property, removing Plaintiffs from the premises prior to any sale, unlawfully depriving them of the use and enjoyment of the premises, converting or otherwise refusing to provide access to their personal belongings, and violating her obligations under landlord-tenant law.  All of Defendant RAY's actions were taken in whole or part because of Plaintiffs disabilities.  Defendant RAY is also vicariously liable for any and all of acts of Defendant MOSKOWITZ and INTERO.

121.     Defendant INTERO is vicariously liable for any and all individual acts of Defendant MOSKOWITZ alleged above.

122.     Defendants maintained a business and professional relationship with Plaintiffs as their landlord and agents of the landlord.

123.     The conduct of Defendants alleged herein constitutes a denial of full and equal access to housing accommodations to Plaintiffs within the meaning of the Unruh Act, Cal. Civ. Code § 51.

124.     In addition to compensatory damages, Mr. Fung and Ms. Mason are entitled to statutory damages under Cal. Civ. Code § 52 of up to three times the amount of actual damages.

125.     Defendants RAY and MOSKOWITZ did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Mr. Fung and Ms. Mason, and/or with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

126.     As a proximate cause of Defendants' conduct, Plaintiffs have been damaged, as set forth above. Defendants' unlawful conduct was a substantial factor in causing them harm.

127.     Wherefore Plaintiffs pray for relief and judgment as set forth below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CLAIM
### Wrongful Eviction and Breach of Quiet Enjoyment (Cal. Civ. Code § 1927)
### [All Plaintiffs vs. Defendant RAY]

128.   Plaintiffs incorporate by reference each allegation contained above in all paragraphs above as if fully set forth herein.

129.   California Civil Code § 1927 provides that there is an implied warranty of quiet enjoyment in all residential leases.

130.   By maintaining a leased dwelling as described above, and by subjecting Plaintiffs to, among other actions, reduction in services, entering their room without notice or permission, threats of unlawful eviction and harassment, actual unlawful eviction, and unnecessarily disturbing Plaintiffs' use and enjoyment of the premises, Defendants breached that duty.

131.   Defendants knew or should have known that Plaintiffs would suffer anxiety or hardship as a result of Defendants' breach of duty.

132.   As a proximate and legal result of Defendants' breach of quiet enjoyment, Plaintiffs have suffered damages and/or hardship as alleged herein and are entitled to damages in an amount according to proof.

133.   Wherefore Plaintiffs pray for relief and judgment as set forth below.

## EIGHTH CLAIM
### Breach of Covenant of Good Faith and Fair Dealing
### [All Plaintiffs vs. Defendant RAY]

134.   Plaintiffs incorporate by reference each allegation contained above in all paragraphs above as if fully set forth herein.

135.   Plaintiffs allege that their lease agreement with Defendant Ray referenced above is subject to an implied covenant of good faith and fair dealing with which she was obligated to comply.

136.   Defendant RAY breached this covenant by actions which include, but are not limited to: failing to complete contracts with the Housing Authority; informing Plaintiffs that they were not allowed to be on the premises; unlawfully locking Plaintiffs out of the premises; entering into contracts with no intention of performing; failing to provide material information to

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

Plaintiffs before inducing them to enter into a contract; and failing to comply with legal duties and obligations imposed by State statutes and other applicable laws, and persisting in violations as set forth above.

137.   Plaintiffs did all, or substantially all of the significant things that the lease required of them to do or was excused from having to do them.

138.   Defendant RAY unfairly interfered with Plaintiffs' right to receive the benefits under the lease.

139.   Subsequent to Defendant's interference with Plaintiffs' rights to receive the benefits under the lease, Defendant RAY entered into a series of promises in bad faith including but not limited to paying for alternative housing, agreeing to pay moneys to Plaintiffs and return their security deposit, and promising to return their personal belongings.

140.   As a proximate result of Defendant's breach of her duties and obligations pursuant to covenants of good faith and fair dealing, Plaintiffs have been damaged in an amount subject to proof at trial.

141.   Wherefore Plaintiffs pray for relief and judgment as set forth below.

## NINTH CLAIM
Violation of the Security Deposit Law (Cal. Civ. Code § 1950.5)
[All Plaintiffs vs. Defendant RAY]

142.   Plaintiffs reallege and incorporate herein by reference, each and every allegation contained in all paragraphs above as if fully set forth herein.

143.   Plaintiffs were unlawfully evicted by Defendant RAY on June 5, 2015 and again on June 13, 2015.

144.   Defendant demanded in the written lease a security deposit in the amount of $2,100 which is almost three times the monthly rent ($723). This request violates Cal. Civ. Code §1950.5(c).

145.   More than 21 calendar days have elapsed since they vacated their unit and despite a demand letter being sent to Defendant RAY on behalf of Plaintiffs, Defendant RAY has failed to send Plaintiffs either a full refund of their $2,100 security deposit or an itemized statement

listing the amounts of any deductions from the security deposit and the reasons for the deductions, together with a refund of any amounts not deducted.

146.     Because Defendant has failed to provide either a refund or an accounting within 21 days and Plaintiffs have vacated the unit, Defendant has forfeited the right to retain any portion of the security deposit for any purpose.

147.     Both the Defendant's demand in violation of Cal. Civ. Code § 1950.5(c) and failure to return any amount of the Plaintiffs' security deposit after demanded its return constituted bad faith on the part of the Defendant. Therefore, Plaintiffs are entitled to their actual damages as well as double their security deposit in damages pursuant to Cal. Civ. Code § 1950.5(l).

## TENTH CLAIM
Tenant Harassment in violation of Cal. Civ. Code § 1940.2
[All Plaintiffs vs. Defendant RAY]

148.     Plaintiffs incorporate by reference each allegation contained above in all paragraphs above as if fully set forth herein.

149.     Defendant RAY engaged in acts directed at Plaintiffs that seriously threatened, menaced, alarmed, annoyed, and harassed Plaintiffs and which interfered with Plaintiff's quiet enjoyment of the premises which is protected pursuant to Cal. Civ. Code § 1927.

150.     As described in greater detail above, Defendant RAY repeatedly and intentionally entered Plaintiffs' unit without notice or permission of the Plaintiffs in violation of Cal. Civ. Code § 1954.

151.     Defendant's course of conduct would have caused any reasonable person to suffer an apprehension of harm.

152.     Plaintiffs have suffered and continue to suffer a serious apprehension of harm because of Defendant's actions as set forth above.

153.     Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiffs, and/or with an improper and evil motive

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendant in an amount according to proof.

154.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

## ELEVENTH CLAIM
### Wrongful Eviction (Cal. Civ. Code § 789.3(b))
[All Plaintiffs vs. Defendant RAY]

155.    Plaintiffs incorporate herein by reference the allegations contained above in all paragraphs as if fully set forth herein.

156.    Defendant RAY, without judicial process or notice, unlawfully removed tenants from the Property and locked them out of the Property. Defendant RAY also unlawfully removed tenants' belongings from the Property.

157.    Plaintiffs have suffered significant injury, lost money, property, and have been made homeless as a direct result of Defendant's wrongful eviction.

158.    Pursuant to Cal. Civ. Code § 789.3(c), Plaintiffs are entitled to actual damages and up to $100 per day for each day the Defendant's continue to bar tenants from the Property. Additionally, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs. Plaintiffs pray for relief and judgment as set forth below.

## TWELFTH CLAIM
### Termination of Electricity (Cal. Civ. Code § 789.3(a))
[All Plaintiffs vs. Defendant RAY]

159.    Plaintiffs incorporate herein by reference the allegations contained above in all paragraphs as if fully set forth herein.

160.    As detailed above, Defendant RAY terminated electricity service to the house for a two week period.

161.    Ms. Ray's purpose was to induce Plaintiffs to leave the Property and terminate their tenancy.

162.    Plaintiffs have suffered significant injury as a direct result of Defendant RAY's termination of electrical service.

163.    Pursuant to Cal. Civ. Code § 789.3(c), Plaintiffs are entitled to actual damages and up to $100 per day for the two weeks that Defendant Ray failed to restore electrical service. Additionally, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs. Plaintiffs pray for relief and judgment as set forth below.

### THIRTEENTH CLAIM
Violation of the Unfair Competition Act (Cal. Bus. & Prof. Code §§ 17200-17210)
[All Plaintiffs vs. All Defendants]

164.    Plaintiffs reallege and incorporate herein by reference, each and every allegation contained in all paragraphs above as if fully set forth herein.

165.    California Business & Professions Code §§ 17200-17210 the "Unfair Competition Law" ("the UCL") defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

166.    Defendants have been engaged in, and continue to engage in, numerous acts and/or a pattern and practice of fraudulent and illegal conduct, and therefore, have engaged in acts of unfair competition as defined in the UCL. These unfair business practices include, without limitation, the following:

A.  As to Defendants MOSKOWITZ and INTERO:

i.  Engaging in abusive rental practices and dealings with Plaintiffs, including, but not limited to, making fraudulent and false promise to provide housing and hotel stay to induce Plaintiffs to leave the property;

ii.  Violating federal and state fair housing laws. Federal and state housing laws prohibit discrimination based upon disability. Defendants violated these statutes by engaging in a pattern and practice of discrimination, harassment and intimidation based upon disability. Defendants' actions are in violation of the Federal Fair Housing Amendments Act (FHAA) and

the Fair Employment and Housing Act (FEHA) and thus constitute *per se* unlawful business practices.

    iii.  Violating Plaintiffs' right to fair housing under the Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq.*) and California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*);

    iv.  Inducing Plaintiffs into modifying their lease contract based upon fraudulent promises; and

    v.  Inducing RAY to breach the lease agreement with Plaintiffs in such a manner as to cause significant harm to the Plaintiffs and to the material benefit of Defendants MOSKOWITZ and INTERO.

B.  As to Defendant RAY:

    i.  Engaging in abusive rental practices and dealings with Plaintiffs, including, but not limited to, making fraudulent and false promise to provide housing;

    ii.  Violating federal and state fair housing laws. Federal and state housing laws prohibit discrimination based upon disability. Defendants violated these statutes by engaging in a pattern and practice of discrimination, harassment and intimidation based upon disability. Defendants' actions are in violation of the Federal Fair Housing Amendments Act (FHAA) and the Fair Employment and Housing Act (FEHA) and thus constitute *per se* unlawful business practices.

    iii.  Violating Plaintiffs' right to fair housing under the Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq.*) and California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*);

    iv.  Stealing, disposing or otherwise converting Plaintiffs' belongings and security deposit;

    v.  Entering into contracts with the Plaintiffs based upon fraudulent promises;

vi.  Inducing Plaintiffs into modifying their lease contract based upon fraudulent promises; and

167.  The Court's intervention is necessary to halt and remedy Defendants' unlawful and unfair acts and practices.

168.  Pursuant to California Business & Professions Code § 17203, Plaintiffs are entitled to an order of this Court, enjoining Defendants from continuing to engage in unfair competition, as defined in Business & Professions Code § 17200, in the State of California. Plaintiffs and the general public will be irreparably harmed if such an order is not granted.

169.  Defendants have been unjustly enriched at the expense of the Plaintiffs, who therefore are entitled to restitution and disgorgement of profits realized by Defendants.

170.  Wherefore Plaintiffs pray for relief and judgment as set forth below.

**FOURTEENTH CLAIM**
Intentional Infliction of Emotional Distress
[All Plaintiffs vs. All Defendants]

171.  Plaintiffs reallege and incorporate herein by reference, each and every allegation contained in all paragraphs above as if fully set forth herein.

172.  Defendants MOSKOWITZ and RAY knew at all times that Plaintiffs were under extreme stress due to financial insecurity and vulnerable to pressure because of their fear of becoming homeless and having nowhere else to live. Defendants MOSKOWITZ and RAY knew that Plaintiffs had mental and physical disabilities and had been homeless prior to living at the Property. Defendants MOSKOWITZ and RAY intentionally devised and executed an unlawful scheme to force the Plaintiffs to vacate the property by preying on Plaintiffs' fears by:

A.  In the case of Defendant RAY, by not providing habitable premises or repairs necessary for habitable premises, threatening to evict Plaintiffs, raising rents, actually evicting Plaintiffs, and interacting with Plaintiffs in an overly harsh, condescending and unpleasant manner.

B.  In the case of Defendant MOSKOWITZ, by coercing and intimidating Plaintiffs into vacating the premises, aiding in attempting to evict Plaintiffs

from premises, aiding and abetting defendant RAY in locking Plaintiffs out of the premises and depriving Mr. Fung and Ms. Mason of their property, assisting in the removal of their property, and negotiating in bad faith on behalf of RAY.

173.   Defendants RAY and MOSKOWITZ acted intentionally and/or recklessly in taking advantage of Plaintiffs, by taking the actions described above and wrongfully and illegally locking them out of the premises, refusing to return their personal belongings, defrauding them knowing that both Plaintiffs suffered from mental health disabilities, and making them homeless.

174.   Defendants' RAY and MOSKOWITZ unfair, unlawful, and fraudulent conduct was extreme and outrageous, and has proximately caused and continues to cause Plaintiffs extreme emotional distress.

175.   Defendant INTERO authorized or ratified Defendant MOSKOWITZ's conduct.

176.   As a direct and proximate result of Defendants' acts, Plaintiffs have been damaged in an amount according to proof at trial.

177.   Wherefore Plaintiffs pray for relief and judgment as set forth below.

## FIFTEENTH CLAIM
### Intentional Misrepresentation (Fraud)
### [All Plaintiffs vs. All Defendants]

178.   Plaintiffs reallege and incorporate herein by reference, each and every allegation contained in all paragraphs above as if fully set forth herein.

179.   As described in greater detail above, Defendant RAY knowingly and maliciously misrepresented to Plaintiffs and to the Housing Authority of the County of Santa Clara that she would lease Plaintiffs their housing accommodations for a term of a year.

180.   As described in greater detail above, Defendant MOSKOWITZ conspired with RAY to defraud Plaintiffs of the benefit of their one year lease. Mr. MOSKOWITZ did so by encouraging the Plaintiffs to leave the property then refused to let them live at the property through the end of their lease despite their clear legal right to do so, and instead negotiated a fraudulent agreement on behalf of Defendant RAY in bad faith, making promises to Plaintiffs

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

with no intention or capacity to perform, and inducing Defendant RAY not to perform promises binding her.

181.    As described in greater detail above, Defendants RAY and MOSKOWITZ knowingly and maliciously misrepresented to Plaintiffs that they would have a temporary hotel room prepaid for a week, that they would be allowed to stay in the house until it was sold, that they would be paid money upon sale of the house, and that their personal belongings would be returned to them.  Neither Defendant RAY, nor Defendant MOSKOWITZ intended to keep any promise they had made to Plaintiffs.

182.    As an employee of INTERO, MOSKOWITZ at all times was acting as its express agent, for the benefit of INTERO, under INTERO's supervision, and with INTERO's knowledge.  Defendant INTERO is vicariously liable for the actions of Defendant MOSKOWITZ because it either ratified or authorized his conduct.

183.    Plaintiffs reasonably relied on Defendants' misrepresentations when renting the unit, negotiating with Defendants, making agreements with the Defendants, and attempting to move back to the Property.

184.    Plaintiffs have suffered significant injury, lost money, property, and have been made homeless as a direct result of Defendants' fraudulent misrepresentations.

185.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

### SIXTEENTH CLAIM
Breach of Implied Warranty of Habitability
[All Plaintiffs vs. Defendant RAY]

186.    Plaintiffs incorporate herein by reference the allegations contained above in all paragraphs above as if fully set forth herein.

187.    In holding out the garage unit for rent to Plaintiffs, and by entering into agreements leasing the Property to Plaintiffs, Defendant RAY impliedly warranted that the garage unit was habitable and fit for residential use.

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

188.    At the time the lease agreement was entered into and throughout the time Plaintiffs occupied the premises, Defendant RAY knowingly caused and permitted hazardous and unhealthy conditions to exist throughout the premises.

189.    Defendant RAY at all times herein mentioned, knew, or should have known that the aforementioned conditions existed in violation of numerous provisions of state and local law.

190.    Defendant RAY knew the garage unit was unpermitted, and she intentionally cut off electricity service to the premises.

191.    Because of the aforementioned conditions, the premises leased by Plaintiffs were unsafe and/or unhealthy. In causing and permitting and in failing and refusing to repair the aforementioned conditions, Defendants breached the warranty of habitability. By virtue of such breach of warranty, and as a consequence of the condition of the premises, the fair rental value of the premises at all times herein mentioned was less than the actual amounts paid by Plaintiffs.

192.    As a result of Defendants' breach of the warranty of habitability, Plaintiffs have suffered actual damages in an amount according to proof.

193.    Defendants' conduct in failing to abate the conditions at the unit was oppressive and malicious and done with a conscious disregard of Plaintiffs' rights, justifying an award of punitive damages.

194.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

## SEVENTEENTH CLAIM
### Negligence
### [All Plaintiffs vs. All Defendants]

195.    Plaintiffs incorporate herein by reference the allegations contained above in all paragraphs above as if fully set forth herein.

196.    All Defendants owed Plaintiffs a duty to operate the rental premises in a manner that was free from unlawful discrimination, a duty not to steal or otherwise convert Plaintiffs' personal property, a duty not to interfere with the contractual rights of the Plaintiffs, a duty not to make fraudulent and false promises, and a duty to hire, train, supervise, and discipline their employees and each other to fulfill those duties.

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

197.    Defendant RAY negligently violated that duty by discriminating against persons with disabilities, converting Plaintiffs' personal properties, unlawfully evicting and locking out Plaintiffs from the Property, breaching the lease with Plaintiffs, and making fraudulent promises to Plaintiffs.

198.    Defendant MOSKOWITZ negligently breached that duty by discriminating against the Plaintiffs on the basis of their disabilities as described in greater detail above by requiring Plaintiffs to vacate the property, inserting himself as agent for Defendant RAY into the tenancy agreement, inciting Ms. Ray to breach her lease with Plaintiffs, and negotiating in bad faith with the Plaintiffs on behalf of Ms. Ray.

199.    The ways that Defendant INTERO violated that duty include, but are not limited to, negligently failing to train its employees and regarding the requirements of federal and state fair housing laws as well as landlord-tenant laws, negligently failing to hire persons who were familiar with the requirements of fair housing and landlord-tenant laws, negligently failing to supervise employees and agents regarding compliance with fair housing and landlord-tenant laws, and negligently failing to discipline or terminate employees who do not comply with the federal and state fair housing and landlord-tenant laws.

200.    As a legal result of Defendants' negligent conduct, Plaintiffs have suffered injuries as described in greater detail above which include but are not limited to physical homelessness, loss of property and severe emotional distress.

201.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

## EIGHTEENTH CLAIM
### Conversion
### [All Plaintiffs vs. Defendant RAY]

202.    Plaintiffs incorporate herein by reference the allegations contained above in all paragraphs above as if fully set forth herein.

203.    As discussed in greater detail above, Defendant RAY locked Plaintiffs out of their unit and removed their personal possessions from the unit.

204.    Plaintiffs have attempted to recover their personal possessions, but Defendant

RAY has refused to return the Property or even to inform the Plaintiffs of the location of their property. Defendant's conduct in retaining Plaintiffs' property and money thus results in a continuing conversion of Plaintiffs' money and property.

205.    Defendant's conduct in charging and retaining Plaintiffs' rent and security deposit without providing Plaintiffs with the benefit of that bargain despite Plaintiffs' demands to honor the bargain was fraudulent in that Defendant intentionally concealed material facts with the intent to harm Plaintiffs' financially and in conscious disregard of Plaintiffs' rights, justifying an award of exemplary damages pursuant to Civil Code section 3294.

206.    Wherefore Plaintiffs pray for relief and judgment as set forth below.

## VII.    RELIEF

Wherefore, Plaintiffs pray for the following relief:

1.    That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

2.    That the Court enjoin all unlawful practices complained about herein and impose affirmative injunctive relief requiring Defendants, their agents, their employees, their assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants regardless of disability, including providing training regarding fair housing laws for all employees and agents, and to enjoin Defendants from:

A.    Refusing to rent to persons with mental health disabilities;

B.    Evicting persons with mental health disabilities on the basis of disability; and

C.    Making discriminatory statements about people with mental health disabilities.

3.    That the Court declare that Defendants have violated the provisions of applicable federal and state fair housing laws;

4.    That the Court award actual, emotional distress, compensatory, exemplary, statutory, and punitive damages to Plaintiffs according to proof;

5.    That the Court award additional damages according to the following statutes:

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

A.     Up to three times the amount of actual damages to Plaintiffs against Defendants pursuant to California Civil Code §§ 52, 54.1, or 3345 according to proof;

B.     Double actual damages to Plaintiffs against Defendant RAY pursuant to California Civil Code §1950.5(l) for bad faith violations of the security deposit statute;

C.     A penalty in the amount of $2,000 to each Plaintiff for each of Defendant RAY's violation of Cal. Civ. Code § 1940.2

D.     In addition to any actual damages, award each Plaintiff the amount of $100 per day from the date of unlawful eviction (June 5, 2015) through the end of the lease or the date of judgment, whichever is later pursuant to Cal. Civ. Code § 789.3(c)(2).

E.     In addition to any actual damages, award each Plaintiff the amount of $100 per day for each day the electricity service was terminated pursuant to Cal. Civ. Code § 789.3(c)(2).

6.    That the Court grant costs of suit, including reasonable attorney's fees; and

7.    That the Court grant all such other relief as the Court deems just.


Dated: April 15, 2016

                          LAW FOUNDATION OF SILICON VALLEY
                          FAIR HOUSING LAW PROJECT


                          /s/ Thomas P. Zito
                          Thomas P. Zito
                          Attorney for Plaintiffs
                          John Fung and Lynette Mason

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury as to each and every claim for which they are so entitled.

Dated: April 15, 2016

LAW FOUNDATION OF SILICON VALLEY
FAIR HOUSING LAW PROJECT


/s/ Thomas P. Zito
Thomas P. Zito
Attorney for Plaintiffs
John Fung and Lynette Mason


**CERTIFICATE OF SERVICE**

I hereby certify that this document, and any exhibits and attachments thereto, has been filed through the CM/ECF system, so as to result in service upon all participants registered as ECF users by transmission of a Notice of Electronic Filing (NEF), and I further certify that paper copies will be sent via U.S. mail to the following non-registered participants at their last known mailing address:

Patrice Johnson Ray
7132 Via Carmela
San Jose, CA 95139


Dated:   April 15, 2016                    /s/ Thomas Zito
                                            Thomas Zito

**FIRST AMENDED COMPLAINT, Fung et al. v. Ray et al.**          **Case No. 5:15-CV-04871-BLF**