UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN FUNG,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PATRICE JOHNSON RAY,<br><br>　　　　Defendant. | Case No. 15-cv-04871-BLF<br><br>**ORDER GRANTING PLAINTIFF JOHN FUNG'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT PATRICE JOHNSON RAY** |

Plaintiff John Fung ("Fung") moves for default judgment by the Court against the only remaining defendant in this case, Patrice Johnson Ray ("Ray"), a/k/a Patrice Johnson. *See generally* Motion for Default Judgment ("Mot."), ECF 56. On January 11, 2016, the court clerk entered default against Ray. ECF 37. Although the other defendants named in the Complaint have resolved this case with Fung, Ray has not filed a response with the Court.

The Court held a hearing on the present motion on January 11, 2018. The Court has considered Fung's briefing and evidence. For the reasons explained below and those stated on the record, the Court GRANTS Fung's motion for default judgment against Ray, and awards damages in the amount of $40,700.

**I.   BACKGROUND**

Fung's Complaint alleges the following facts: Prior to March 2015, John Fung and Lynette Mason were chronically homeless until they found a home to rent at 7132 Via Carmela ("the Property") in San Jose, California. *See* Compl. ¶ 1, ECF 1. Defendant Ray was the sole owner and landlord of the Property, which was a single-family house with an attached garage. *Id*. ¶ 14. Fung and Mason moved into the garage unit on or about March 6, 2015. *Id*. ¶ 16.[1]

As a recipient of a Section 8 Housing Choice Voucher through Santa Clara County's Housing 1000 Program, Fung was able to pay a portion of the rent based on his income while the

---

[1] Mason was voluntarily dismissed as a plaintiff on October 31, 2017. *See* ECF 55. For the purposes of this motion, the Court therefore only addresses the facts as they relate to Fung.

local housing authority would subsidize the remainder of the rent by paying the rent directly to Ray pursuant to the voucher program. *Id*. ¶ 19. Ray was aware of this arrangement with the Housing Authority of Santa Clara County ("Housing Authority"). *Id*.

When Fung moved in, Ray informed him that the Housing Authority would not approve the unit until it was repaired and made habitable. *Id*. ¶ 20. However, Ray offered to let him move in for free in exchange for making the repairs himself. *Id*. Fung moved in and made a number of repairs to the garage unit, yet Ray still accepted $400 in rent for the months of March and April. *Id*. ¶¶ 20-21. Ray herself would also use the garage unit and rifle through Fung's belongings in the unit without notice or permission from Fung. *Id*. ¶ 22.

On April 16, 2015, Fung signed a one-year written lease for the term of April 15, 2015, to April 15, 2016. *Id*. ¶ 25. Under the terms of the lease, Fung rented the entire Property from Ray, which included use, enjoyment and possession of the house as well as the garage unit. *Id*. However, shortly after signing the lease, Ray locked the door between the garage and the rest of the house with a deadbolt, preventing Fung from accessing the remainder of the house. *Id*. ¶ 31. By locking him out of the house, Fung was deprived access to cooking facilities and laundry, and was prevented from retrieving his food, cookware or other possessions that had been kept in the house. *Id*. Despite signing a lease to rent the entire Property to Fung, Ray prevented Fung from accessing the house and Ray continued to live in the house on the Property. *Id*. ¶ 34. Ray also rented out rooms to at least three, and often more, additional tenants. *Id*. Ray told the other tenants that Fung was "crazy" and "psychotic." *Id*. ¶ 35.

Within one week of signing the lease agreement with Fung, Ray hired Defendants Daniel Moskowitz ("Moskowitz") and Intero Real Estate Services, Inc. ("Intero") to market and sell the Property. *Id*. ¶ 36.[2] Although Ray had been informed that a notice of default was recorded against the Property as of February 2015 due to her failure to make timely mortgage payments, Ray did not inform Fung of the default or the possibility of foreclosure if the default was not cured. *Id*. ¶¶ 15, 18. Then, at some time in May 2015, Ray told Fung that the house was in foreclosure. *Id*.

---

[2] On September 20, 2017, Defendants Moskowitz and Intero were voluntarily dismissed from this lawsuit upon executing a settlement agreement. *See* ECF 52.

¶ 37. While attempting to sell the Property in June 2015, Moskowitz told Fung that he had to leave the Property and stay in a hotel for one week while the home was being shown to potential buyers. *Id.* ¶ 42. Ray informed Fung that the hotel was prepaid for seven days. *Id.* However, after only two nights at the hotel, the manager informed Fung that he had to leave because his room had only been paid for two nights and was no longer being paid for. *Id.* ¶ 45. After he was forced to leave the hotel on June 7, 2015, Fung called Ray to tell her that he was returning to the Property. *Id.* ¶ 46. Ray refused to speak to Fung, but informed Fung through her boyfriend that Fung could not return to the Property. *Id.*

Although most of Fung's belongings remained in the garage unit at the Property, when Fung returned home he could not enter the garage unit because Ray had changed the numerical access code and locked him out. *Id.* ¶¶ 47-48. At that point, Ray had also moved all of Fung's belongings either to the side yard of the Property, or to an unknown location. *Id.* ¶ 48. Fung made several attempts to retrieve his belongings, which included medicine and cell phones, from Ray but to no avail. *Id.* ¶¶ 50-51.

On June 12, 2015, Fung negotiated an oral agreement by phone with Ray with the assistance of counsel. *Id.* ¶ 52. Pursuant to the agreement, Fung could continue living at the Property rent-free for two months, and he would be paid $1,000 when the Property was sold. *Id.* ¶¶ 53-54. Ray also agreed to return Fung's security deposit and all of his personal property by 4:00 p.m. on June 14, 2015. *Id.* ¶ 54.

Although Fung was allowed back into the garage unit on June 12, 2015, he spent only one night in his garage unit. *Id.* ¶ 55. On June 13, 2015, Ray saw Fung on the Property and began yelling at him, repeatedly lunging at him, and screaming expletives while being restrained by her boyfriend. *Id.* ¶ 56. Ray's boyfriend told Fung that the Property was "not your house," and Fung left the Property for fear that he was in danger of physical harm. *Id.* Later, Fung attempted to return to the Property and retrieve his belongings, but he was again denied access by Ray. *Id.* ¶ 57. As a result of these events, Fung became homeless again for the remainder of the lease. *Id.* ¶ 62.

Fung filed this lawsuit naming Ray as a defendant on October 22, 2015. *See generally* Compl. The Complaint contained nineteen (19) causes of action, eighteen (18) of which were

asserted against Ray. Ray was properly served with a Summons and Complaint on November 5, 2015. *See* ECF 17. Ray failed to answer or otherwise defend against Fung's allegations in the lawsuit. Fung obtained a Clerk's entry of default against Ray on January 11, 2016. *See* ECF 37. Fung now seeks default judgment from the Court.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F. 2d 1089, 1092 (9th Cir. 1980). "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The district court also must "assess the adequacy of the service of process on the party against whom default is requested." *DFSB Kollective Co., Ltd. v. Bourne*, 897 F.Supp.2d 871, 877 (N.D. Cal. 2012).

In exercising its discretion to enter default judgment, a district court considers seven factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) ("*Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. In considering these factors after a clerk's entry of default, the court takes all well-pleaded factual allegations in the complaint as true, except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The Court may, in its discretion, consider competent evidence and other papers submitted with a motion for default judgment to determine damages. *Id.*

## III.  DISCUSSION

Before discussing the *Eitel* factors, the Court notes that on default, the Court is required to assume liability as pled. Had Ray participated in this litigation, the result of this case against her may very well have been different.

4

### A. Service of Process

When a plaintiff requests default judgment, the court must first assess whether the defendant was properly served with notice of the action. *See, e.g.*, *Solis v. Cardiografix*, No. 12–cv–01485, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012). Under Federal Rule of Civil Procedure 4(e), service on an individual within a judicial district of the United States is adequate if made by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B).

Fung has demonstrated that although Ray appeared to refuse personal service, a process server served Ray with a summons and complaint on November 5, 2015 by leaving the documents with a person of suitable age and discretion at Ray's home in Santa Clara County. *See* ECF 17. Copies of the summons and complaint were also mailed to Ray's home address. *Id*. Moreover, Ray is not a minor, an incompetent person, or a person whose waiver has been filed. *See* Fed. R. Civ. P. 4(e), 55(b)(2). The Court is satisfied that service of process was adequate with respect to Ray pursuant to Rule 4(e)(2)(B).

### B. Jurisdiction

The Court next considers whether it has subject matter jurisdiction over the action, and personal jurisdiction over the parties. Both are satisfied here. The Complaint seeks relief under federal law, including violations of the Federal Fair Housing Amendments Act, 42 U.S.C. §§ 3601-3617 (first claim), and conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985(3) (fourth claim). *See* Compl. ¶¶ 71-75, 86-89. Therefore, federal question jurisdiction exists over these claims pursuant to 28 U.S.C. § 1331 and the Court has supplemental jurisdiction over Fung's state law claims pursuant to 28 U.S.C. § 1367. The Court also has personal jurisdiction over Ray, as the Complaint alleges that at all relevant times, Ray owned the Property in San Jose, California and was a resident of Santa Clara County. *See* Compl. ¶ 7. Because Ray is a resident of California, she is subject to general personal jurisdiction in this Court.

### C. *Eitel* Factors

#### i. Factor One: Possibility of Prejudice to the Plaintiff

5

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. Without entry of default, Fung would have no other means of recourse against Ray for the damages caused by her disconcerting conduct. Ray's refusal to participate in this litigation since its inception, and to respond to the court summons, entitles Fung to a default judgment against her. *See* Mot. at 6-7. Accordingly, the first factor favors entry of default judgment. *See, e.g.*, *Wilamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, No. 14-cv-00848, 2014 WL 5281039, at *6 (N.D. Cal. Jan. 21, 2014) (citations omitted) ("Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor.").

### ii. Factors Two and Three: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The Court considers the second and third *Eitel* factors—concerning the merits of Fung's substantive claims and the sufficiency of his complaint—together because of the relatedness of the inquiries. In analyzing these factors, the Court accepts as true all well-pleaded allegations regarding liability. *See, e.g.*, *HICA Educ. Loan Corp. v. Warne*, No. 11-cv-04287, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012). In other words, the allegations in the Complaint, with the exception of those relating to damages, are deemed admitted by the non-responding party. *See Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1127 (N.D. Cal. 2016).

Although the Complaint alleges eighteen claims against Ray, the Court focuses its inquiry on the two claims that give rise to damages on default judgment. As discussed at the hearing, the Court finds that Fung is only entitled to damages with respect to his ninth claim for violation of the security deposit law, Cal. Civ. Code § 1950.5, as well as statutory damages on his eleventh claim for wrongful eviction in violation of Cal. Civ. Code § 789.3(b). *See* Compl. ¶¶ 118-123; 131-134. The Complaint does not adequately notify Ray as to damages on the remaining claims.[3]

At the hearing, the Court pointed out the discrepancies between the motion and the Complaint regarding damages, and indicated that only claims nine and eleven would result in recoverable damages in light of the pleadings. Fung's counsel stated on the record that Fung

---

[3] Although the remaining claims do not give rise to recoverable damages on default judgment, the Court finds that with regard to liability—Fung's allegations are adequately pled as to these claims as well.

6

would be satisfied with default judgment on claims nine and eleven, although he originally requested $50,000 in his motion. The Court therefore limits its analysis regarding the merits of Fung's substantive claims and the sufficiency of the Complaint to Fung's ninth and eleventh causes of action.

### 1. Claim 9: Violation of the Security Deposit Law, Cal. Civ. Code § 1950.5

Fung's ninth claim against Ray is for a violation of California Civil Code § 1950.5. Pursuant to § 1950.5, "[a] landlord may not demand or receive security, however denominated in an amount or value in excess of an amount equal to two months' rent, in the case of unfurnished residential property, and an amount equal to three months' rent, in the case of furnished residential property, in addition to any rent for the first month paid on or before initial occupancy." Cal. Civ. Code § 1950.5(c). The Complaint alleges sufficient factual matter indicating that at least part of the residential property was unfurnished when Fung signed the lease agreement with Ray. *See* Compl. ¶¶ 20-22, 28-29, 32 (describing garage as uninhabitable and discussing Ray's interference with furniture deliveries). Thus, Ray's demand in the written lease agreement of a $2,100 security deposit was more than twice the amount of Fung's monthly rent ($723) and a violation of Cal. Civ. Code §1950.5(c). *See* Compl. ¶¶ 25, 120-121.

In any event, Ray has violated the security deposit law because she failed to respond or return any portion of the deposit after Fung vacated the Property and demanded the return of the deposit funds. California Civil Code § 1950.5(d) requires that a residential landlord "hold" a tenant's security deposit. When a tenant vacates the premises, a landlord must return the deposit or assert a claim against it as compensation for (among other things) a tenant's rent default or to pay for damages caused by the tenant. *See* Cal. Civ. Code §§ 1950.5(b), (e). The Complaint alleges that Fung vacated the Property and sent a demand letter to Ray for the security deposit, but he did not receive either a full refund of the $2,100 security deposit or an itemized statement listing the amounts of any deductions from the security deposit and the reasons for the deductions, together with a refund of any amounts not deducted. *See* Compl. ¶¶ 54, 58, 121. Ray has thus forfeited the right to retain the security deposit and has violated the statute.

Pursuant to California Civil Code § 1950.5(l), Fung is also entitled to double the amount of the security deposit in damages if the Court finds that Ray retained the security deposit in bad faith. *See* Cal. Civ. Code § 1950.5(l). *See* Compl. ¶ 123. Such a violation may subject the landlord to statutory damages of up to twice the amount of the security, in addition to actual damages. Cal. Civ. Code § 1950.5(l). "The court may award damages for bad faith whenever the facts warrant that award, regardless of whether the injured party has specifically requested relief." *Id*. As stated at the hearing, the Court finds that Ray acted in bad faith by retaining the security deposit in violation of § 1950.5, and thus finds a penalty of twice the amount of the $2,100 security deposit—a total of $4,200—to be an appropriate penalty as provided by the statute.

For the foregoing reasons, the Court concludes that Fung has adequately alleged a violation of California Civil Code § 1950.5 against Ray, and that Ray acted in bad faith.

### 2. Claim 11: Wrongful Eviction, Cal. Civ. Code § 789.3(b)

California Civil Code § 789.3 prohibits landlords from unlawfully evicting tenants. To establish a claim for wrongful eviction and wrongful lockout, Fung must be able to establish that he had a tenancy interest in the Property. *See* Cal. Civ.Code § 789.3(b); *Schwartz v. United States*, 593 F. App'x 663, 664 (9th Cir. 2015). Here, Fung clearly alleges a tenancy interest: he and Ray signed a written one-year lease agreement commencing on April 15, 2015, whereby Fung rented the entire Property from Ray in exchange for rent of $723 per month. *See* Compl. ¶ 25; *see also* Declaration of John Fung ("Fung Decl.") ¶ 3, ECF 56-1; Fung Decl. Exh. 1, ECF 56-2.

A landlord violates section 789.3 when the landlord, with intent to terminate the tenant's occupancy under the lease, willfully (1) prevents the tenant from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device; (2) removes outside doors or windows; or (3) removes from the premises the tenant's personal property, the furnishings, or any other items without the prior written consent of the tenant. Cal. Civ. Code §§ 789.3(b)(1)-(3) (West). A landlord who violates section 789.3 is liable to the tenant for actual damages, statutory damages of up to one hundred ($100) for each day or part thereof that the landlord remains in violation of the section. *See* § 789.3(c).

The Complaint is riddled with allegations that Ray prevented Fung from gaining

reasonable access to the Property from the inception of the lease. *See, e.g.*, Compl. ¶¶ 28, 31, 48, 50-51, 57, 132. Specifically, on the same day that the lease was signed, Ray locked the door connecting the garage unit to the rest of the house with a deadbolt, preventing Fung from accessing the Property other than the garage unit despite the fact that the terms of the lease agreement clearly provided for Fung's rental of the entire Property. *Id.* ¶ 31. A few months later, Fung was locked out and prevented from accessing even the garage unit, and he was forced to leave the Property entirely. *Id.* ¶¶ 42-46. However, the Court is satisfied that Fung has alleged that as of the first day of the lease, April 15, 2015, Ray intentionally locked Fung out of the Property in violation of section 789.3(b)(1). Fung has also alleged that Ray removed Fung's personal property and furnishings without Fung's permission on multiple occasions in violation of section 789.3(b)(3). *See* Compl. ¶¶ 51, 55-61.

The Court concludes that the Complaint adequately alleges wrongful eviction against Ray for the full duration of the lease agreement, because Fung alleges that from the inception of the lease he was locked-out of the main house and only provided with access to a small part of the premises. Fung is therefore entitled to statutory damages of up to $100 per day for each day that Ray violated the wrongful eviction statute. As discussed further below, Fung's statutory damages pursuant to section 789.3(c) amount to $36,500.

### iii. Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in the litigation. *BMW of North Am., LLC v. Zahra*, Case No. 15-cv-2924, 2016 WL 215983, at *4 (N.D. Cal. Jan. 19, 2016). When the amount is substantial or unreasonable, default judgment is discouraged. *Id.* Here, Fung seeks $50,000 in damages, which he argues is "substantial but not unreasonable." Mot. at 12. The Court agrees. This amount is far less than the amount sought in *Eitel*—$2.9 million—and serves to sway this factor in favor of granting Fung's motion. *Eitel*, 782 F.2d at 1472; *see also S.E.C. v. Lowrance*, No. 11-CV-03451-EJD, 2012 WL 2599127, at *5 (N.D. Cal. July 5, 2012) (awarding between $21 million and $26 million in damages on default judgment).

However, as stated at the hearing, the discrepancies between the Complaint and Fung's

9

motion for default judgment prevent the Court from awarding the full $50,000 in requested damages. Rather, the Court awards only statutory damages pursuant to Fung's ninth and eleventh claims.

### iv. Factors Five and Six: The Possibility of a Factual Dispute or Excusable Neglect

Under the fifth and sixth *Eitel* factors, the Court considers the possibility of a factual dispute over any material fact and whether the defendant's failure to respond may have resulted from excusable neglect. *BMW*, 2016 WL 215983, at *4. As to the fifth factor, Fung served Ray with the Complaint. ECF 17. There is no dispute of material fact because Ray has not responded or participated in this litigation and upon an entry of default by the Clerk, the factual allegations of the complaint related to liability are taken as true.

Regarding the sixth factor, there is nothing to suggest that there has been a technical error or excusable neglect on Ray's behalf. Thus, both factors five and six weigh in favor of granting default judgment.

### v. Factor Seven: Policy Favoring Decision on the Merits

Although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate. *J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030, 2014 WL 121711, at *2 (N.D. Cal. Jan. 13, 2014). Therefore, this general policy in favor of a decision on the merits is outweighed by the circumstances of this case, and the seventh *Eitel* factor weighs in favor of default against Ray. The Court agrees that finality is necessary at this point in the proceedings: Ray had the opportunity to participate in this case for over two years but chose not to, even when Defendants Moskowitz and Intero actively litigated and ultimately settled Fung's claims against them.

### vi. Summary

The Court finds that the *Eitel* factors favor entry of default judgment. Accordingly, the Court GRANTS Fung's motion for default judgment against Ray.

## D. Relief Sought

In his motion for default judgment, Fung sought a variety of actual damages and statutory

1  damages amounting to $50,000. *See* Mot. at 15.  Fung's attorneys did not seek attorneys' fees and

2  costs. *Id*.  At the hearing, the Court explained that although Fung had adequately pled the

3  elements of each of his claims, a plaintiff is limited to his pleadings in terms of the amount of

4  damages he can recover from a defendant.  A due process issue exists if the Court awards an

5  amount in excess of what is pled in the Complaint, because Ray may have chosen to default based

6  on the damages sought in the pleading. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not

7  differ in kind from, or exceed in amount, what is demanded in the pleadings.")

8  As pled, Fung has proven entitlement only to damages for his ninth and eleventh claims

9  against Ray.  Because California Civil Code § 1950.5(l) provides for damages of up to twice the

10  amount of Fung's security deposit ($2,100), the Court finds that Fung is entitled to $4,200 for

11  Ray's violation of the security deposit law, California Civ. Code § 1950.5.  In addition, Fung has

12  shown that he is entitled to damages of $100 per day for the duration of his one-year lease because

13  he has adequately alleged that Ray locked him out of a large part of the Property as soon as the

14  lease began.  Fung is therefore entitled to $36,500 in statutory damages for the lock-out. *See* Cal.

15  Civ. Code §§ 789.3(b)(1), (c).  The total amount of damages awarded to Fung is $40,700.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff John Fung's motion for default judgment is GRANTED.
2. Defendant Patrice Johnson Ray is in default.
3. Plaintiff John Fung is awarded judgment against Defendant Patrice Johnson Ray.  It is HEREBY ORDERED that Fung shall recover from Ray (1) $4,200 in damages for violations of California Civil Code § 1950.5; and (2) $36,500 in statutory damages for violations of California Civil Code § 789.3(b); **for a total of $40,700.**
4. The Clerk shall enter judgment in favor of Fung and against Ray and close the file.

**IT IS SO ORDERED.**

Dated: January 16, 2018

_____
BETH LABSON FREEMAN
United States District Judge